**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Thomas William HALE, Defendant-Appellant.**

**No. 16608.**

United States Court of Appeals
Seventh Circuit.

June 10, 1968.

Rehearing Denied July 9, 1968
En Banc.

Harry F. Peck, Milwaukee, Wis., for appellant.

James B. Brennan, Thomas E. Weil, Milwaukee, Wis., for appellee.

Before CASTLE, Chief Judge, KNOCH, Senior Circuit Judge, and FAIRCHILD, Circuit Judge.

KNOCH, Senior Circuit Judge.

Thomas William Hale, defendant-appellant, was convicted by jury trial of violating Title 18, United States Code, § 2312, unlawful interstate transportation of a known stolen motor vehicle. He was sentenced to serve one year in custody.

Defendant contends that admission of his incriminating statements in evidence was reversible error.

At a hearing on defendant's motion to suppress certain of his statements as evidence, the following was disclosed. Sheriff Hollis Bridenhagen of Door County, Wisconsin, testified that on October 25, 1966, unarmed with any warrant, he called on the defendant whom he knew as "Michael J. Wright" at defendant's home in Egg Harbor, Wisconsin. He said that he displayed his credentials and the defendant agreed to follow the Sheriff (in his own automobile) back to the Sheriff's office in Sturgeon Bay, Wisconsin, to discuss some "bad checks."

As they entered the office, the Sheriff asked the defendant whether the defendant was aware of the stack of cancelled checks on the desk. The defendant said that he had written them and that his name was not "Michael J. Wright." When the Sheriff asked about the automobile the defendant had been driving, the defendant said, "No, it's not my car either."

The Sheriff testified further that:

Before we started talking about the checks, I told him that whatever he said could be used against him, and things like that, what goes with his rights. But at the time he told me the car was not his, it was only about two sentences about the check and about the car. Immediately upon he telling me about the automobile not being his, I said: "You are in trouble, and I do not want you to make another statement; I will see that you get an attorney," and I put him back in jail.

He testified that the entire conversation took no longer than ten minutes. The defendant himself estimated the time as approximately ten or fifteen minutes. The District Court determined that the defendant had been inadequately informed of his rights and that no party could offer in evidence any of the defendant's above described statements.

James O. Ebbeson of Sturgeon Bay, Wisconsin, an attorney at law, testified that he was appointed to represent the defendant by Door County Judge Edward G. Minor on October 25, 1966; that he conferred with the defendant "for about an hour and a half, maybe two hours," the same day; that he advised the defendant to co-operate in every way with the law enforcement officers; and that it was his intention to permit the law enforcement officers to interrogate the defendant.

He testified further that he told the Sheriff that the defendant and he had discussed the matter at great length and intended to co-operate with the Sheriff's office and with any other office in the State of Wisconsin, including the F.B.I.

The following morning Mr. Ebbeson was told that law enforcement officials including a Mr. Converse of the F.B.I. were coming from out of town to see the defendant, and, later that day, Mr. Ebbeson advised two nonresident police officers that his client was prepared to co-operate in any way. He testified that it was his intention to be present at the interrogation and that, although he said nothing to that effect, he assumed he would be called when Mr. Converse arrived. He said he had told the defendant early in his interview to say nothing unless counsel were present. He returned to his office. He was not called. The defendant evidently ignored the advice about having counsel present.

At the trial Edward E. Converse, then retired, who had been an F.B.I. special agent in October 1966 testified that he saw the defendant on October 26, 1966, at 2:25 P.M. At 3:30 P.M. the defendant signed a statement which Mr. Converse testified was entirely volunteered and not the result of interrogation. During this time, defendant was fully advised of his rights and executed a written waiver. While notes of his statement were being transcribed, the defendant left the room for about ten minutes to have a photograph made. He returned, read the statement, and signed it. He spent about twenty-five minutes in actually making his statement, in which he said that one Millard F. Madden permitted the defendant to use his automobile at

Orange Park, Florida, to do an errand for Madden, but not to take the car out of the State of Florida, that after taking the car, the defendant began to drink, found himself about sixty miles away, and just kept going, without notifying the owner, through several states, ending his trip in Wisconsin by mid-August 1966, where he used the name of Wright and asserted ownership of the car.

Mr. Ebbeson testified that he was a little disappointed (and told the defendant that he would have liked to have been present) but that defendant was a very intelligent man with a college background; that he reviewed with the defendant what the defendant had said and that he was not concerned.

Mr. Madden testified at the trial that defendant, whom he knew as "Michael Scanlon," had offered to take his laundry to a laundromat in Orange Park, Florida, that the car was lent for that purpose, to be returned in an hour or an hour and one half so that Mr. Madden could drive to work, that on a previous occasion he had refused defendant's request to borrow the car for a trip outside the State of Florida.

Sheriff Bridenhagen testifed to seeing the defendant in possession of the car in Wisconsin.

Mr. Converse was allowed to testify concerning his interview with the defendant and the statement made by defendant.

The defendant argues (1) that the statement to Mr. Converse was a derivitive confession obtained while he was in custody, flowing from a prior confession obtained in violation of his rights, and hence not admissible in evidence; and (2) that this Court, in the exercise of its supervisory powers over the administration of justice in the Circuit, should hold that taking a statement from a defendant in the absence of his counsel in effect violates the American Bar Association Canons of Ethics and that such a statement should be suppressed.

The defendant feels that an aggravating circumstance exists in that he was not only in continuing custody but that Sheriff Bridenhagen to whom the first, suppressed, confession was made, was present when the second confession was submitted the following day to the F.B.I. agent. He likens this case to Westover v. United States, 1966, 384 U.S. 436, 494–497, 86 S.Ct. 1602, 16 L.Ed.2d 694 (a companion case to Miranda v. State of Arizona, 1966, 384 U. S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694). Carl Calvin Westover was arrested by local police at about 9:45 P.M. on March 20, 1963. He was put in a line-up and booked at about 11:45 P.M. He was interrogated by local police that night and throughout the next morning, without the requisite warnings, respecting some local crimes. The interrogation was continued immediately at noon by three F.B.I. agents with respect to two robberies in California. After two or two and one-half hours, Westover signed confessions to each of those crimes which included acknowledgment that he had been told he did not have to make a statement, that it could be used against him and that he had a right to counsel. The Supreme Court in reversing the conviction spoke of the impact of a continuous period of questioning and the lack of evidence of any articulated waiver of rights after the F.B.I. agents began their interrogation. From Westover's point of view, the Court thought, the warning came at the end of the interrogation period. The defendant here stresses the Court's suggestion that a different case would be presented had Westover been removed by the F.B.I. agents in time and place from the surroundings of the original confession, and then warned of his rights and given an opportunity to exercise them.

A different case is presented here where an extremely short period of interrogation was followed by lengthy consultation with counsel who advised full co-operation and who communicated that fact to the authorities.

The defendant was further cautioned by the F.B.I. agent that he need not answer questions in the absence of his lawyer and that he could stop answering questions at any time. The evidence shows that the defendant came to the interrogation prepared to make a statement and that he did make a statement with full knowledge of his rights.

The defendant argues that even a sophisticated defendant cannot know that his first confession will be suppressed and that he may remain silent at a later interrogation. He quotes Mr. Justice Jackson to the effect that once the cat is let out of the bag the defendant cannot get it back and that a later confession may always be looked on as the fruit of the first. United States v. Bayer, 1947, 331 U.S. 532, 540, 67 S.Ct. 1394, 91 L. Ed. 1654. But Mr. Justice Jackson went on to say at page 541, 67 S.Ct. 1394 that the United States Supreme Court had never gone so far as to hold that making a confession under circumstances which preclude its use perpetually disabled making a usable confession when the objectionable circumstances were removed.

The defendant contends that Canon 9 of the American Bar Association's Canons of Legal Ethics is applicable here. Canon 9 provides that a lawyer should not communicate on the subject of controversy with a party represented by counsel, that he should undertake to negotiate or compromise the matter only with counsel, that he should avoid anything that may tend to mislead a party not represented by counsel and should not undertake to advise him as to the law.

In the course of oral argument reference was made to United States v. Smith, 7 Cir., 1967, 379 F.2d 628, where Canon 9 was raised in connection with interviews conducted in the absence of appointed counsel and without their permission. As Miranda[1] standards were made prospective, they did not apply in Smith. The Court found the statements sought to be suppressed were clearly voluntary in fact and that Constitutional doctrine prior to Miranda required no more. However the Court went on to express the opinion that in post-Miranda cases, the Miranda rule would preclude admission of statements resulting from in-custody interrogation after known appointment of counsel without counsel's presence or approval in the absence of deliberate and understanding choice to forego the assistance of counsel at the interrogation.

In United States v. Nielsen, 7 Cir., January 30, 1968, 392 F.2d 849, the defendant after appropriate warnings said he had retained counsel and would not sign a waiver of rights form or "anything" until he had spoken to his attorney. When an F.B.I. agent asked if defendant wanted to call his attorney, the defendant said he would call later in the morning but that questioning could continue. He then answered five questions in the negative. The government, on trial, contended that these denials were false. The Trial Court instructed the jurors that they might consider whether these denials showed a consciousness of guilt. This Court on appeal, in a two to one decision, held that the defendant's refusal to sign the waiver followed by an apparent willingness to answer questions should have alerted the agents by this apparently contradictory position to inquire further to ascertain whether there was an intelligent change of position or confusion.

In the case before us there was no possibility of confusion. The defendant had conferred with his counsel and had decided to "co-operate". This decision was communicated to the authorities at least twice. Counsel knew an F.B.I. agent was coming that afternoon. He did not mention that he expected to be notified of the exact time. The de-

1. Miranda v. State of Arizona, 1966, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694; Johnson v. State of New Jersey, 1966, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882.

fendant was reminded of his right to have counsel present at the outset of the interview. Mr. Ebbeson testified that the defendant was a very intelligent man with a college background. As Judge Major said in United States v. Plata, 7 Cir., 1966, 361 F.2d 958, 961, cert. den. 385 U.S. 841, 87 S.Ct. 94, 17 L.Ed.2d 74 (cited by Judge Cummings in his Dissent to Neilson):

> We think the inference is inescapable that defendant with knowledge of his right to counsel and to remain silent if he so desired voluntarily responded to the agent's inquiry.

The Judgment of the District Court is affirmed.

This Court is grateful for the skilled efforts of Mr. Harry F. Peck, Jr., of the Wisconsin bar, who represented the appellant as Court-appointed counsel.

Affirmed.