**UNITED STATES of America,**
**Appellee,**

v.

**Freddie Dale BARNHILL, Appellant.**

**No. 20012.**

United States Court of Appeals,
Eighth Circuit.

July 27, 1970.

Robert J. Routh, Lincoln, Neb., for appellant.

Duane L. Nelson, Asst. U. S. Atty., Omaha, Neb., for appellee; Richard A. Dier, U. S. Atty., Omaha, Neb., on the brief.

Before VOGEL, HEANEY and BRIGHT, Circuit Judges.

BRIGHT, Circuit Judge.

Freddie Dale Barnhill appeals his jury-trial conviction for violation of the Dyer Act (18 U.S.C. § 2312), transporting a stolen motor vehicle in interstate commerce. He raises two issues: that Nebraska Highway Patrol officers obtained his confession after violating the rule of *Miranda* [1] by pressing an interrogation upon him against his wishes, and that the prosecution failed to prove the voluntariness of his confession introduced at trial after a Jackson v. Denno [2] hearing. We reject these contentions and affirm the conviction.

The substantive facts disclose that Barnhill, by representing himself as a prospective purchaser, obtained possession of a used Chevrolet station wagon from a car dealer in Santa Ana, California, for the purpose of testing it. He failed to return the car. A few days later, he removed the license plates on the vehicle and replaced them with tags he took from his brother's car. Between April 4 and April 6, 1969, defendant and his wife Vicki (age sixteen) drove from California to the outskirts of Rushville, Nebraska, where the Chevrolet station wagon collided with another car. During the accident investigation which followed, Highway Patrol officers, in verifying vehicle registrations, discovered that the station wagon bore license plates which defendant's brother had reported stolen.

Troopers Dan Schenck and Morris McKillip of the Nebraska Highway Patrol, in the presence of other law enforcement officers and after furnishing defendant with a detailed *Miranda* warning,[3] interviewed Barnhill concerning his ownership and use of the station wagon. Trooper Schenck summarized the interview in writing on a printed form and obtained the accused's signature on the summary. That summary, as written and introduced into evidence as a prosecution exhibit, reads:

*I,* Freddie Barnhill, *am* 22 *years of age and my address is* None. *I have been duly warned by* Dan G. Schenck #199, *who has identified himself as*

1. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

2. 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964).

3. As read from a printed card, the warning contained the following:
"I would like to advise you that I am a police officer. Do you understand that?
You have a right to remain silent and not make any statements or answer any of my questions. Do you understand that?
Anything you say can be and will be used against you in a court of law.

Do you understand that?
You have the right to talk to a lawyer and have him present with you during ing the questioning. Do you understand that?
If you cannot afford a lawyer, you have the right to have a lawyer appointed for you prior to questioning at no expense or costs to you.
Do you willingly do without the services of a lawyer at this time?
Knowing your rights in this matter are you willing to answer some questions or make a statement to me now?"
Barnhill responded affirmatively to each inquiry.

Nebraska State Trooper, *That I do not have to make any statement at all, and that any statement I make may be used in evidence against me on the trial for the offense concerning which this statement is herein made. Without promise of hope or reward, without fear or threat of physical harm, I freely volunteer the following statement to the aforesaid person:* [4]

Advised took the Plates off his brothers car in Santa Ana, about the 4th of April, Left Santa Ana Thursday Evening, drove Straight to Nebr. did you steal this car—Plead 5th. Randy Barnhill is brother. is Vicki your wife. Yes. Where are you heading—Back East.* Have you ever been arrested for a felony?—Car theft, burglary, possession of drugs (Benies M.M. —)*—The car is stolen.

Plates are in a White Jacket in the car. Took car from st & Flower in Santa Ana was test driving. (sic)

During the course of the trial, when it became apparent that the government intended to elicit testimony relating to Barnhill's statement, the trial court conducted a Jackson v. Denno type hearing to determine the voluntariness of Barnhill's statement. Trooper Schenck testified that after he fully explained the accused's *Miranda* rights, which Barnhill said he understood, Barnhill, without voicing objection, answered the officer's preliminary questions. When Schenck asked directly: "Did you steal this car?", Barnhill responded: "I plead the 5th." The officer, thereafter, inquired concerning the accused's relationship with Randy Barnhill (his brother) and Vicki (his wife) and his destination (back East). The accused answered these questions without objection. At this point, Officer Schenck left the room to answer a telephone call. McKillip continued the interrogation asking about Barnhill's prior arrests. Schenck testified that he returned in two or three

minutes. He heard the accused say: "I might as well tell the truth; car is stolen." Barnhill added that he had taken the car from Santa Ana to test drive it and that its original plates remained inside the car.

The accused testified that when the *Miranda* warnings were read to him the first time he, "laughing and joking", pled the Fifth Amendment to each sentence of the card. He further testified:

When he finished reading the card they shook me down, and then I asked them—I says: "Was Vicki going to be held and put out in a cell?" And they said "Yes." And I asked the officer—I forget which one it was—if I made a statement, would she be released, and he said "yes."

⁎ ⁎ ⁎ ⁎ ⁎ ⁎

⁎ ⁎ ⁎ from there he read the card to me again; and I said "yes" to every one; and then I made the statement.

Vicki related her version of the incident in the following manner:

⁎ ⁎ ⁎ as soon as we walked in the door they [read the rights off a card].

⁎ ⁎ ⁎ ⁎ ⁎ ⁎

[Freddie] started laughing and he said he pleaded the Fifth Amendment.

⁎ ⁎ ⁎ ⁎ ⁎ ⁎

I don't think [the officers] said anything. And then Freddie asked them if they were going to hold me; and they said "yes"; and I guess he—he said "I might as well tell you"—and then he told them, and they wrote it down and then he signed it.

At the conclusion of the Jackson v. Denno hearing, the trial court specifically determined that Barnhill's statement was a voluntary one and not the product of any illegal interrogation.

Significantly, during the hearing on voluntariness, neither Vicki nor Freddie Barnhill commented upon Officer Schenck's short absence from the room

4. The italicized portion represents printed matter, the balance handwritten by Officer Schenck.

* The portion between the asterisks was excised from the exhibit before it was submitted to the jury.

during the course of the interrogation. Officer Schenck made that disclosure as a rebuttal witness at the hearing following the defendant's· presentation. Thereafter, during the presentation of the defendant's case to the jury, Barnhill testified that the bargain to release his wife probably occurred while Schenck was out of the room answering the telephone call. Vicki similarly tailored her testimony. Trooper McKillip, the other interrogating officer, was not called as a witness.

We consider the claimed violation of the rule enunciated by Chief Justice Warren in *Miranda*:

> Once warnings have been given, the subsequent procedure is clear. If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease. Miranda v. Arizona, 384 U.S. 436, 473–474, 86 S.Ct. 1602, 1627, 16 L.Ed.2d 694 (1966).

■ We recognize that the government in offering Barnhill's statement which it obtained in the absence of an attorney bears a heavy burden to demonstrate that the appellant knowingly and intelligently waived his privilege against self-incrimination. See *Miranda, supra,* 384 U.S. at 475, 86 S.Ct. 1602. In this case, neither the accused nor his wife disputed that the officers carefully warned Barnhill of his rights. The accused testified to repetitive Fifth Amendment claims made jokingly and laughingly. Vicki indicated that the accused *laughingly* pleaded the Fifth Amendment. Reasonably understood in the context of the interrogation, Barnhill's Fifth Amendment response applied to a single question—whether the car was stolen. The interrogating officers did not dwell on that point; Barnhill later spontaneously offered the information sought by that direct question. Trooper Schenck so testified and the district court so found. The record discloses no pressing interrogation of an accused who declines to answer. This case, we think, falls within the rationale

of Klingler v. United States, 409 F.2d 299, 307–308 (8th Cir.), cert. denied, 396 U.S. 859, 90 S.Ct. 127, 24 L.Ed.2d 110 (1969), a situation in which an accused who fully understands his *Miranda* rights waives them except as to selective questions which he declines to answer.

■ Barnhill's second contention is that Highway Patrol officers coerced his confession by promising to release his wife Vicki from custody upon his making a statement. He urges that the record demonstrates a time sequence of events establishing that during Trooper Schenck's brief absence from the interrogation room, his partner, McKillip, promised to release Vicki and that as Schenck reentered the room, he heard Freddie say: "I might as well tell the truth; the car is stolen"; without hearing the preceding promise. Barnhill contends that his and Vicki's testimony concerning the bargain stands unrebutted since the prosecution chose not to call Trooper McKillip or any other person in the room who could have testified to conversations during Schenck's absence. Relying upon Sims v. Georgia, 389 U.S. 404, 88 S.Ct. 523, 19 L.Ed.2d 634 (1967), Barnhill concludes that such failure to rebut his testimony, which Vicki corroborated in testimony before the jury, mandates acceptance of his testimony on this subject. We disagree.

Trooper Schenck testified that no promise or bargain served to induce Barnhill's statement. Vicki's version of what transpired, as related at the Jackson v. Denno hearing, tends to negate the existence of a promise and buttresses Schenck's explicit testimony. Only after Trooper Schenck disclosed at the *Jackson* hearing that he had been absent from the room for a brief interval, did the defendant and Vicki attempt to relate that absence to a bargain or promise. This later testimony in the context of the entire record fails to conclusively establish that Trooper McKillip or anyone else bargained for Freddie's statement. Such evidence bore only upon the jury's consideration of the voluntary nature of that statement.

**344**

■ The evidence, produced at the Jackson v. Denno hearing clearly established the voluntariness of the accused's statement. Evans v. United States, 375 F.2d 355 (8th Cir. 1967), reversed on other grounds sub nom. Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). Following this preliminary determination, the trial court properly instructed the jury to disregard the statement unless voluntarily made. Appellant requested no other action from the trial court, neither moving to strike the testimony of Officer Schenck nor the exhibit which summarized the interview. The jury resolved the question of guilt or innocence against the defendant and, in our review of the record, the jury did so based on overwhelming evidence.

We affirm.