Ct. 1970); *Shoup v. Mayerson*, 454 *P*. 2d 666 (Okl. Sup. Ct. 1969).

However, the debtor-creditor argument fails because Manalapan as broker is neither debtor nor creditor to Gateway. Manalapan was agent of both the insured and the insurer, *Spilka, supra,* and merely a conduit for payment of premiums from insured to insurer and for payment of refunds to insured from insurer. The unearned premiums ultimately belong to former insureds of Gateway, or those who stand in their shoes, such as financing companies. The former insureds are creditors but are not debtors of the insurance company. Thus there is no mutuality of debt and credit.

Where insolvency exists, the law favors equal distribution of the effects of the debtor among all of his creditors. However, certain claims may be entitled to priority of payment over others by virtue of statutory provisions. 44 *C. J. S. Insolvency* § 14 at 373. Thus, without statutory preference, these creditors should stand in the same place with regard to the distribution of this estate as all others similarly situated.

Judgment for plaintiff.

STATE OF NEW JERSEY, PLAINTIFF, v.
BILL TOMARAS, DEFENDANT.

Superior Court of New Jersey
Law Division

Decided April 26, 1979.

*Mr. John W. Surgent* for defendant.

*Mr. Ray A. Farrington,* Assistant Bergen County Prosecutor, for the State (*Mr. Roger Breslin Jr.,* Prosecutor, attorney).

MADDEN, J. S. C. The question before the court is a novel one in our State. May the State introduce evidence that, while awaiting trial on a murder indictment, defendant escaped from incarceration and fled the State, in an effort to show consciousness of guilt on the murder charge? I hold that such evidence may be admitted.

On December 15, 1975 one Robert Cooper was shot and killed while working at the Garfield Pistol Range in Garfield, New Jersey. At the time of his murder 26 weapons were stolen from the pistol range. Several days later defendant Bill Tomaras and two other persons were arrested in connection with this incident. Tomaras was subsequently indicted for first degree murder and incarcerated in the Bergen County Jail Annex. On December 25, 1977 he escaped from the jail and was apprehended some ten months later in New Mexico. He was returned to this jurisdiction to face trial on the murder indictment shortly thereafter.

The State contends that the escape constitutes flight which tends to show a consciousness of guilt of the crime for which defendant was incarcerated. It is true the New Jersey courts have long recognized that flight, in certain circumstances, is relevant and probative in a criminal trial to prove consciousness of guilt. *State v. Andrial,* 150 *N. J. Super.* 198, 200–201 (Law Div. 1977), and cases cited therein. The usual context in which this issue arises is when a defendant flees the scene of a crime, thereby allegedly demonstrating by his flight some involvement in that crime. Here, however, we are dealing with an escape from prison after arrest, indictment and incarceration for first degree murder.

Technically, an escape may be considered flight, since that term is defined in *Black's Law Dictionary* as "the evading of the course of justice by voluntarily withdrawing oneself in order to avoid arrest or detention, or the institution or continuance of criminal proceedings * * *." This definition is sufficiently broad to encompass as escape such as occurred here. A defendant's "flight or attempts to escape" have been deemed probative of consciousness of guilt in a homicide case, *Underhill's Criminal Evidence* (4 ed. 1935), § 570, as well as of the commission of a criminal act in general. See *e. g., McCormick on Evidence* (2 ed. 1976), § 271; *Wigmore on Evidence* (3 ed. 1940), § 276; *Wharton's Criminal Evidence* (13 ed. 1972), §§ 144, 214 and 215.

It should be noted that there has been some criticism of the use of flight evidence where an accused flees the scene of a crime. The United States Supreme Court has indicated disagreement with the ancient maxim that "the wicked flee when no man pursueth, but the righteous are as bold as a lion,"[1] and has stated:

* * * it is a matter of common knowledge that men who are entirely innocent do sometimes fly from the scene of a crime through fear of being apprehended as the guilty parties, or from an unwillingness to appear as witnesses. [*Alberty v. United States*, 162 U. S. 499, 511, 16 S. Ct. 864, 868, 40 L. Ed. 2d 1051 (1896), quoted in *Wong Sun v. United States*, 371 U. S. 471, 483, n. 10, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963)]

See also, *United States v. Myers,* 550 *F.* 2d 1036, 1049 (5 Cir. 1977), *aff'd* after remand 572 *F.* 2d 506 (5 Cir. 1978). In *Myers* the court stated:

[The] probative value as circumstantial evidence of guilt depends upon the degree of confidence with which four inferences can be drawn: (1) from the defendant's behavior to flight; (2) from flight to consciousness of guilt; (3) from consciousness of guilt to consciousness of guilt concerning the crime charged; and (4) from consciousness of guilt concerning the crime charged to actual guilt of crime charged. [550 *F.* 2d at 1049]

It has been argued that flight from the scene of a crime, being of the ambiguous nature suggested by the Supreme Court in *Alberty,* does not support the second and fourth inferences of the above formulation. See, *e. g., United States v. Jackson,* 572 *F.* 2d 636, 639 (7 Cir. 1978). When dealing with an escape, however, the inferences rest upon a firmer foundation. The reasons offered by the Supreme Court for flight by an innocent party, *i. e.,* a desire to avoid possible blame or involvement, do not apply where one has already been apprehended, indicted and incarcerated for an offense. More-

---

[1] See *e. g., McCormick on Evidence* (2 ed. 1976), § 271.

over, as stated in *People v. Terry,* 2 *Cal.* 3d 362, 85 *Cal. Rptr.* 409, 466 *P.* 2d 961 (Sup. Ct. 1972), *cert.* den. 406 *U. S.* 912, 92 *S. Ct.* 1619, 32 *L. Ed.* 2d 112 (1972) :

* * * it is also probable that only one who expects his guilt to be proved at trial will attempt an escape and that an innocent man will stay for trial in order to clear his name and win lawful liberty. [85 *Cal. Rptr.* at 430, 466 P. 2d at 982]

See, also, *United States v. Crisp,* 435 *F.* 2d 354, 359 (7 Cir. 1970) ; *State v. Andrial,* 150 *N. J. Super.* 198, 202 (Law Div. 1977).[2]

Our own courts have permitted the introduction of evidence analogous to that offered here. In *State v. Young,* 97 *N. J. L.* 501 (E. & A. 1922), the court permitted the admission of testimony showing that defendant had attempted to procure tools with which to effect an escape, concluding that such evidence was competent as to the issue of conscious guilt. In *State v. Petrolia,* 45 *N. J. Super.* 230 (App. Div. 1957), certif. den. 25 *N. J.* 43 (1957), *cert.* den. 355 *U. S.* 942, 78 *S. Ct.* 431, 2 *L. Ed.* 2d 422 (1958), the court permitted the introduction of evidence showing that, after his arrest for armed robbery and release on bail, the defendant left the jurisdiction of the State of New Jersey and lived in Illinois for four years under an assumed name. The court ruled that this action constituted flight tending to show a consciousness of guilt for the jury to weigh in determining the guilt or innocence of the defendant.

██ Based on the above, I hold that evidence of a defendant's escape from prison while awaiting trial of a criminal charge is competent evidence which may tend to show a consciousness of guilt for the crime charged. There is nothing

---

[2] Although *Andrial* involves a different fact pattern, namely the appropriateness of a flight instruction where a defendant voluntarily absents himself on the fourth day of trial, the court there did cite the quoted language from *People v. Terry, supra,* 150 *N. J. Super.* at 202.

so prejudicial in this evidence that it outweighs its probative value, and I therefore hold it admissible. The jury will be given an appropriate instruction as to the inferences to be drawn from and the weight to be accorded to such evidence. See *United States v. Crisp, supra* at 359.