**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Thomas Patrick SMITH, Defendant-Appellant.**

**No. 15878.**

United States Court of Appeals Seventh Circuit.

June 22, 1967.

Rehearing Denied July 14, 1967.

**630**

from Oklahoma to Illinois with knowledge that it had been stolen. He was sentenced to five years imprisonment. We affirm the conviction but vacate the sentence and remand for a legal sentence.

Smith was arrested in Los Angeles, California, on November 29, 1965, by virtue of a warrant issued by the United States Commissioner for the Northern District of Illinois. He waived a removal hearing, and on December 7, 1965, he was indicted in the Northern District of Illinois. Thereafter, in Chicago, he was allowed to sign his own recognizance bond. On April 5, 1966, Smith failed to appear for setting of a trial date, and a bench warrant issued. On May 2, 1966, he was arrested in Chicago and remained in custody from that date through the dates of his conviction and sentencing, June 13 and August 12, 1966.

Smith challenges the district court's adverse ruling on his motion to suppress incriminating statements made by him to FBI agents in Los Angeles on November 29 and 30, 1965, and in Chicago on May 2, 1966, and claims error in the use of the statements against him at the trial.

The statement of November 29 was made while Smith was being taken to the county jail immediately after his arrest. Prior to this statement, the FBI agent who arrested Smith advised him that he did not have to furnish any information, that anything he said could be used against him in court, that he had a right to consult an attorney or anyone else he chose before furnishing any information, and that the court would appoint a lawyer if he could not afford one. Upon being informed of the charge, Smith said that he was not in Oklahoma at the time of the alleged crime but had been working in Florida.

Stanley A. Bass, Chicago, Ill., for appellant.

Edward V. Hanrahan, U. S. Atty., Lawrence E. Morrissey, Asst. U. S. Atty., Chicago, Ill., John Peter Lulinski, Gerald M. Werksman, Asst. U. S. Attys., of counsel, for appellee.

Before CASTLE, KILEY and FAIRCHILD, Circuit Judges.

KILEY, Circuit Judge.

Defendant Smith was convicted by a jury for violation of the Dyer Act[1] by transporting a stolen Chevrolet truck

■ Smith contends that this statement was inadmissible under Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), because he was not "clearly informed" that he had a

---

1. 18 U.S.C. § 2312 (1964).

right to have a lawyer present during interrogation.[2]

■■ The Supreme Court in Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966), limited the application of *Miranda* to cases in which trial began after June 13, 1966. Since the Court described the *Miranda* standards as "wholly prospective," 384 U.S. at 733, 86 S.Ct. 1772, we are not free to extend the application of *Miranda* beyond the date set by the Supreme Court, and accordingly cannot accommodate Smith's trial under it, even though his motion for new trial was made June 15 and denied July 12, 1966.

Smith does not, as he could, urge *Miranda* safeguards in support of a claim of involuntariness in fact of this statement. Presumably he sees, as we do, no basis for such a contention as to the November 29 statement.

The November 30, 1965, statement was made the day following Smith's Los Angeles arrest. He was taken for removal proceedings pursuant to Fed.R.Crim.P. 40(b) before a United States Commissioner, who appointed an attorney to represent Smith and continued the case to December 6, 1965, to await arrival of process from the Northern District of Illinois. Smith was unable to post the bond of $1,500.00 and was committed to the custody of the United States Marshal. FBI agents then brought him to the Marshal's office, "booked" him and interviewed him in the absence of his counsel, who had not yet seen him. The agents repeated the warnings given the previous day in the FBI car. They told him that identification in the name of Thomas Patrick Smith had been found in the stolen truck, and he replied that he had lost some of his identification in Indiana in 1961 or 1962.

Smith's claim as to the November 30 statement is that it resulted from a denial of his Sixth Amendment right to assistance of counsel, and of his right to "effective and meaningful" counsel under the Criminal Justice Act of 1964,[3] as implemented by the rules of the Southern District of California District Court. Smith also claims that the admission of this statement calls for reversal under our supervisory power.

Clearly Hamilton v. State of Alabama, 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed.2d 114 (1961), does not support the claim. There petitioner, at his arraignment, pleaded not guilty to a capital charge without benefit of counsel. In reversing the conviction, the Court stressed the importance of the arraignment under Alabama law because certain defenses could not be asserted at trial unless claimed at the arraignment. Smith also relies on White v. State of Maryland, 373 U.S. 59, 83 S.Ct. 1050, 10 L.Ed.2d 193 (1963), where the petitioner pleaded guilty at a preliminary hearing in the absence of counsel, and, after a subsequent change of plea with benefit of counsel, petitioner was tried and the fact of the original plea was introduced in evidence.

■■ Smith's hearing in Los Angeles on November 30 was not a "critical stage in a criminal proceeding" within the meaning of *White* or *Hamilton* so as to require the presence of his court-appointed attorney. Nothing occurred before the Commissioner which could have adversely affected his right to counsel at his trial.[4] Assuming *arguendo* Smith

---

2. To render custodial incriminating statements admissible, the following safeguards are required: "Unless other fully effective means are adopted" to assure protection of Fifth Amendment rights, "[h]e must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, and that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires." Miranda v. State of Arizona, 384 U.S. at 479, 86 S.Ct. at 1630.

3. 18 U.S.C. § 3006A (1964).

4. Even the right to a hearing on removal was not waived until the continuation of the hearing on December 6, 1965, when Smith's court-appointed attorney was present.

was entitled to the presence of the lawyer appointed by the Commissioner at the FBI interview, cf. Escobedo v. State of Illinois, 378 U.S. 478, 486, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1963), it is clear that he waived that right and that his statement was voluntary. Prior to making the statement, he was advised of his rights by both the Commissioner and the FBI agents. And the record reveals no indication of coercion, psychological or otherwise. Johnson v. State of New Jersey, 384 U.S. 719, 730 (1966); Shultz v. United States, 351 F.2d 287 (10th Cir. 1965).

We see no basis for an exercise of our supervisory power in the events of November 30. Smith relies principally upon Ricks v. United States, 118 U.S.App. D.C. 216, 334 F.2d 964 (1964), but that case is not authority for our use here of our supervisory power to reverse Smith's conviction and hold inadmissible the November 30 statement. After Ricks' hearing on probable cause was continued to allow him to obtain counsel of his choice, the district court allowed the government's motion to release Ricks to the police. Ricks told the court he was willing to help the police, and there was no indication that his cooperation was involuntary, but he was interrogated and used by the police to solve other crimes. At the time of the release, Ricks had not obtained counsel and had not been told of his right to court-appointed counsel if indigent. The court exercised its supervisory power to reverse Ricks' conviction because he was interrogated in the absence of counsel after he was committed to the custody of the warden and, thus, under judicial control.

■ There is no showing of a denial of Smith's right to counsel under the Criminal Justice Act as implemented by the court rule in California.[5] He made the statement before the appointed attorney had an opportunity to see him. The Criminal Justice Act's requirements were satisfied by the appointment of the attorney by the Commissioner, and there is no showing that the California rule requiring the appointed attorney to "contact the defendant * * * at the earliest possible time" was relevantly violated here.

In conclusion, we hold that the district court did not err in admitting into evidence the false exculpatory statements made by Smith in Los Angeles on November 29 and 30, 1965.

After Smith's removal, indictment in the Northern District of Illinois, release on his own recognizance and failure to appear for the setting of a trial date, he was arrested in Chicago on May 2, 1966, at approximately 10:00 a. m. While he was being driven to the FBI office, the arresting agent warned him of his constitutional rights. The warnings were repeated during processing at the FBI office, and he was told why he had been arrested. Smith said he could not have stolen the truck since he had been driven from Oklahoma to Chicago by a personal friend in the friend's car. The agent said the statement Smith gave in Los Angeles had proved to be false. The agent then offered to check out the second story, but said if it would turn out to be false, Smith might save them some time. The agent testified that Smith answered, "Well, then, there is no sense in checking it out." The agent asked him if he wanted to make a statement or call a lawyer, and Smith gave the agent a lawyer's card. The agent then called Smith's court-appointed counsel and the interrogation ceased. Smith was turned over to the United States Marshal's office sometime between 11:00 and 11:30 a. m.

Smith contends that the false exculpatory statements given by him to agents in absence of counsel at the processing

5. Section III, subparagraph 13 of the Local District Court Plan for the Southern District of California specifically provides: "The attorney appointed shall contact the defendant *if he is in jail* at the earliest possible time but not later than 3 days prior to arraignment. (Italics in original.) (1965) (adopted Feb. 15, 1965).

denied his right to assistance of counsel, and were therefore inadmissible under Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964).

*Massiah* did not determine, as Smith claims, that post-indictment statements elicited out of presence of a defendant's attorney rendered those statements *ipso facto* constitutionally inadmissible. There a co-defendant cooperated with officers and by means of hidden devices surreptitiously elicited incriminating statements by Massiah for hidden officers. The Court's decision was limited to the "circumstances here disclosed." 377 U.S. at 207, 84 S.Ct. 1199.

And the earlier Spano v. People of State of New York, 360 U.S. 315, 79 S.Ct. 1202, 3 L.Ed.2d 1265 (1959), does not render the statements inadmissible. There post-indictment in-custody statements were held unconstitutionally admitted in a capital case with sentence of execution. The Court found that Spano's will had been "overborne by official pressure, fatigue and sympathy falsely aroused" by a "pretended friend" during long intervals of questioning from February 4 at 7:10 p. m. until his confession at 3:25 a. m. February 6. Here, when rearrested, Smith was told of his rights and the interval between his arrest and surrender of him to custody of the Marshal was no more than an hour and a half.

Smith also claims that we should use our supervisory power to adopt an exclusionary rule for violation of Fed.R.Crim. P. 9 [6] and the violation of the "forthwith" requirement of the warrant.[7] The "violation" asserted is that the FBI agents failed to bring him directly to the Marshal's office but instead brought him to the FBI office for "processing."

■ The warrant itself does not define "forthwith," nor does Rule 9 define "promptly." The courts must determine in each case whether a delay is unreasonable and thus violative of the rule. We hold that the agents here acted "without unnecessary delay," and this meets the legal requirement. United States v. D'Argento, 373 F.2d 307, 313 (7 Cir., 1967).

■ Smith's final authority for his challenge of the ruling on his motion to suppress is Canon 9 of the ABA Canons of Professional Ethics, because in each event interviews were conducted in absence of appointed counsel and without their permission. Judicial enforcement of compliance with the Canons of Ethics, however, is a matter of supervisory power rather than a requirement of constitutional dimensions. Here Smith's statement was clearly voluntary in fact, and constitutional doctrine prior to *Miranda* required no more. We see no reason on this record, in view of the overwhelming evidence of his guilt, to use our supervisory power to reverse his conviction.

■ We have held that the *Miranda* rule does not reach Smith's conviction. However, we are of the opinion that in post-*Miranda* cases the *Miranda* rule applies with *greater* force to preclude as unconstitutional the admission of statements resulting from in-custody interrogation *after known retainer or appointment of counsel* and without counsel's presence or approval, unless it very clearly appears that the accused deliberately and understandingly chose to forego the assistance of counsel at such interrogation.

This should not be understood to mean that this court in future cases will not use its supervisory power to set aside judgments where statements have been admitted which were obtained from an accused who is known to have counsel, appointed or retained, but who is not in custody, unless it very clearly appears

6. Rule 9(c) (1) which governs warrants after indictment provides that "the [arresting] officer * * * shall bring the arrested person promptly before the court * * *."

7. The warrant here provided that Smith should be brought "forthwith" before the district court.

that the accused deliberately and understandingly chose to forego the assistance of counsel.

■ No objection was made to the jury argument which Smith claims violated his constitutional rights, and there was no motion for a mistrial, and we cannot say the argument was plain error. The court instructed the jury, among other things, that they must not single out an instruction as stating the law but consider the instructions as a whole. With respect to Smith's exculpatory statements the court gave three instructions, substantially that if the jury found exculpatory statements in evidence untrue, the statements could be considered as evidence of consciousness. of guilt, since ordinarily an innocent person does not find it necessary to fabricate a voluntary statement to establish his innocence. There is no merit here to the claims of denial of Fifth or Sixth Amendment rights. The instructions refer only to the voluntary statements given by Smith, not to any refusal to give statements or request to call his attorney. And there was no statement given after he requested consultation with his attorney.

■ At the close of trial, defense counsel offered to stipulate that a time limit be set at which the jury might separate should they not then reach a verdict. The trial court rejected the offer. The verdict was returned at 6:00 p. m., after about three hours deliberation. Smith claims the rejection of the "stipulation" was an abuse of discretion. The record does not disclose that the government stipulated to the effect claimed, and in any event does not warrant a finding that the court abused its discretion.

Smith challenges the validity of the five year sentence contending that under Stapf v. United States, 125 U.S.App.D.C. 100, 367 F.2d 326 (1966), also a Dyer Act case, he is entitled to a credit of 102 days against his sentence for pre-sentence custody, after his May 2 arrest, during which he was unable to make the bail of $5,000 set by the judge. The court in *Stapf* held that the district court there had the "duty * * * to provide credit for presentence custody for want of bail to all defendants not granted credit administratively by virtue of the provisions of § 3568"[8] even though the statute is not retroactive. 367 F.2d at 330.

The court there surveyed legislative development of presentence custody credit and noted the "general practice of federal courts" to extend the credit for time spent in jail for lack of bail set, except where a minimum sentence was mandatory. It pointed out that the original section 3568, as amended in 1960[9] to remedy this disparity, presumed the courts would continue to grant credit in cases where there was no minimum mandatory sentence. The result, however, was to create a new disparity, since credit was automatic for offenses warranting a minimum term but "deniable" by courts as to the other, less serious offenses. 367 F.2d at 328–329. It was held it was illegal for the district court to effectuate the arbitrary classification by denying the credit where it had the power, according to the "general practice of federal courts," to prevent that unjust discrimination. We are persuaded by this reasoning. See also Dunn v. United States, 376 F.2d 191, (4th Cir. 1967); but see Schreter v. United States, 265 F.Supp. 369 (D.N.J.1967).

■ We affirm the judgment of "guilty as charged," but the sentence is hereby vacated and the cause is remanded for imposition of a legal sentence giving credit for the time Smith spent in jail after May 2, 1966, and before the date upon the legal sentence imposed under this mandate.

We wish to extend our thanks to Stanley A. Bass, court-appointed counsel, for his dedicated service in representation of appellant in this court.

Affirmed in part, reversed in part.

8. 18 U.S.C.A. § 3568 (Supp.1966).

9. 74 Stat. 738 (1960).