**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Donald Roy CRISP, Defendant-Appellant.**
**No. 17935.**

United States Court of Appeals,
Seventh Circuit.

Nov. 10, 1970.

Rehearing Denied Jan. 11, 1971.

---

**356**

Robert H. Friebert, Milwaukee, Wis., for defendant-appellant.

David J. Cannon, U. S. Atty., Milwaukee, Wis., for plaintiff-appellee.

Before HASTINGS, Senior Circuit Judge, and FAIRCHILD, and CUMMINGS, Circuit Judges.

CUMMINGS, Circuit Judge.

After a jury trial, defendant was convicted of the July 26, 1967, armed robbery of the Bank of Greenfield in Greenfield, Wisconsin, and received a 15-year prison sentence.[1] Defendant does not challenge the sufficiency of the evidence upon which his conviction rests. Instead, he asserts that several errors during the course of that trial require a reversal.

**I**

Defendant first contends that the trial court improperly admitted into evidence false exculpatory statements and admissions which he gave to the Federal Bureau of Investigation while incarcerated in Craig, Colorado. On September 1, 1967, FBI Agent Roy M. Hickman interviewed defendant there concerning an unrelated offense. Hickman read defendant the FBI's waiver of rights form, which was executed by defendant. He

then gave Hickman a signed statement with respect to a stolen car charge. Hickman knew that there was a warrant pending against defendant for the Greenfield bank robbery and asked defendant about it. Defendant said he was not willing to discuss any bank robbery, but that he had no objection to discussing the circumstances surrounding his activities before and after the Greenfield robbery. He then made the statements which were introduced at his trial.

Even after an initial waiver of constitutional rights by the suspect, Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, strictly circumscribes the scope of permissible custodial interrogation:

"Once warnings have been given, the subsequent procedure is clear. If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease. At this point he has shown that he intends to exercise his Fifth Amendment privilege; any statement taken after the person invokes his privilege cannot be other than the product of compulsion, subtle or otherwise. Without the right to cut off questioning, the setting of in-custody interrogation operates on the individual to overcome free choice in producing a statement after the privilege has been once invoked." 384 U.S. at pp. 473–474, 86 S.Ct. at p. 1627.

Where, as here, custodial interrogation proceeds without the presence of defense counsel, the Government bears a "heavy burden" of demonstrating that the suspect's constitutional rights have been respected. 384 U.S. at p. 475, 86 S.Ct. 1602.

The record clearly reveals that defendant Crisp invoked his Fifth Amendment privilege when the questioning turned to the Greenfield bank robbery. The testimony of Agent Hickman

---

1. Although the indictment contained two counts charging defendant with violations of 18 U.S.C. §§ 2113(a) and 2113(d), the trial court treated Counts I and II as a single offense and imposed sentence under Section 2113(d).

shows that he asked Crisp about the bank robbery and that Crisp, in response, said that "he was unwilling to discuss any activities on his part concerning the bank robbery or any bank robbery in which he might have been involved." [2] Despite this seemingly unequivocal assertion, Agent Hickman did not scrupulously observe the suspect's privilege of silence, for he continued his interrogation concerning the Greenfield robbery by asking the suspect "if he was willing to discuss the circumstances surrounding his activities before and after the bank robbery." Defendant reportedly assented to the request and the questioning proceeded.

■■■ Both the letter and spirit of the Supreme Court's decision in *Miranda* call for condemnation of even this seemingly innocuous police conduct. The procedural safeguards imposed in that case were premised upon the observation that custodial interrogation in the absence of defense counsel is inherently intimidating and destructive of free enjoyment of the constitutional privilege against self-incrimination. To be effective, those safeguards must be fully observed, and the rights of the suspect must be jealously guarded. Not even the slightest circumvention or avoidance may be tolerated. The rule that interrogation must cease, in whole or in part, in accordance with the expressed wishes of the suspect means just that and nothing less. Once the privilege has been asserted, therefore, an interrogator must not be permitted to seek its retraction, total or otherwise. Nor may he effectively disregard the privilege by unreasonably narrowing its intended scope.

In this case, close scrutiny of the testimony of Agent Hickman fails to demonstrate a justification for his persistent inquiries concerning the role of defendant Crisp in the Greenfield robbery. There is no suggestion that Crisp's refusal to discuss this or any other bank robbery was in any manner ambiguous

as to the extent of his intended silence. Nor does it appear that Crisp voluntarily and spontaneously invited, either explicitly or implicitly, further discussion of the Greenfield bank robbery or subsequently contracted the range of matters which he wished to exclude from questioning. Cf. Land v. Commonwealth of Virginia, 176 S.E.2d 586 (Va.1970). There is no pretense that the "circumstances surrounding his activities before and after the bank robbery" bore relevance to any other matter than the instant indictment. From this record, we can only conclude that the inquiry into Crisp's willingness to discuss these matters in the face of his clear statement that he did not wish to discuss any bank robbery amounted to an impermissible attempt to hedge his initial assertion of his right to silence on that matter. Cf. United States v. Barnhill, 429 F.2d 340 (8th Cir. 1970).

## II

Defendant further objects that the court improperly admitted an oral confession given to FBI agents while he was incarcerated in the Kenosha County Jail in Kenosha, Wisconsin. On December 18, 1967, FBI Agent Jack D. Wood was contacted by the office of the United States Marshal or by Assistant United States Attorney Franklyn M. Gimbel, who stated that defendant wished to speak to a representative of the FBI. After their arrival at the Kenosha County Jail, a deputy sheriff also told Wood and his associate, Agent Gayle E. Rogers, that Crisp wanted to talk to them. Upon arrival at his cell, the agents read the waiver of rights form to defendant, who *declined to sign the form but told them he understood his rights, was represented by counsel, and nevertheless wanted to talk to them.* Defendant did not request the presence of his counsel. He told the agents that he, John Kwitek, David Kwitek, Roy Huck and Harold Timm had committed the Greenfield bank robbery. He stated that he did

---

**2.** Agent Hickman, the sole witness at the *voir dire*, testified from notes and did not attempt to relate precisely the conversation with defendant Crisp.

not wish to furnish any further details until this information was given to the Assistant United States Attorney. Crisp also requested a transfer to the Waukesha County Jail.

Defendant contends that his oral confession to FBI Agents Wood and Rogers was taken in violation of his Fifth and Sixth Amendment rights because they did not contact his appointed attorney before the interview in the Kenosha County Jail although they admittedly knew his identity.

■ Crisp asserts first that his refusal to sign the FBI waiver form is fatal to the Government. That form supplies evidence of waiver, and a refusal to sign such a form may be a relevant factor in determining the validity of an asserted waiver in light of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. Cf. United States v. Nielsen, 392 F.2d 849 (7th Cir. 1968). *Miranda* does not, however, require such a written indication of waiver as the sole means of proving that fact. Klingler v. United States, 409 F.2d 299, 308 (8th Cir. 1969), certiorari denied, 396 U.S. 859, 90 S.Ct. 127, 24 L.Ed.2d 110. Here the interview was conducted at the express request of defendant Crisp who persisted in his expressed desire to pass information to the Assistant United States Attorney even after having been informed of his rights and regardless of the absence of his attorney. Cf. Arrington v. Maxwell, 409 F.2d 849, 853 (6th Cir. 1969), certiorari denied, 396 U.S. 944, 90 S.Ct. 381, 24 L.Ed.2d 245.

■■ Defendant further claims that the interrogation proceeded in violation of Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246, because it took place after his indictment without the presence of defense counsel. Relying upon Hancock v. White, 378 F. 2d 479 (1st Cir. 1967), and United States

ex rel. O'Connor v. New Jersey, 405 F.2d 632 (3d Cir. 1969), certiorari denied sub nom. Yeager v. O'Connor, 395 U.S. 923, 89 S.Ct. 1770, 23 L.Ed.2d 240, Crisp urges that the Supreme Court's per curiam reversal in McLeod v. Ohio, 381 U.S. 356, 85 S.Ct. 1556, 14 L.Ed.2d 682, of State of Ohio v. McLeod, 1 Ohio St.2d 60, 203 N.E.2d 349, compels the conclusion that *Massiah* rendered inadmissible *per se* incriminatory statements made to Government agents after an indictment without the actual presence of defense counsel. While *Massiah* may not be confined to circumstances of surreptitious post-indictment interrogation, we decline to read into *McLeod* any holding that after indictment, a defendant may never effectively waive his right to counsel. See United States v. De Loy, 421 F.2d 900, 902–903 (5th Cir. 1970) ; Arrington v. Maxwell, 409 F.2d 849, 853 (6th Cir. 1969), certiorari denied, 396 U.S. 944, 90 S.Ct. 381, 24 L.Ed.2d 245. *Massiah* and *McLeod* must be read in light of the Supreme Court's subsequent decision in Miranda v. Arizona, 384 U.S. 436, 475, 86 S.Ct. 1602, 16 L.Ed.2d 694, which expressly recognized the validity of a knowing and voluntary waiver of rights during the "critical stage" of custodial interrogation. See Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977. As *Miranda* and *Escobedo* clearly indicate, formal indictment is no longer the determinative event upon which constitutional safeguards hinge. By the same token, formal indictment does not absolutize constitutional rights or inexorably rigidify adversary postures. The crucial feature of both *Massiah* and *McLeod* was the deliberate acquisition of information by police from a suspect under circumstances preventing his effective exercise or waiver of his rights to counsel at a time when those rights had clearly attached by virtue of his formal indictment.[3] Here,

---

3. In *Massiah* the circumstances happened to be the surreptitious and deceptive use of a confederate and an eavesdropping device. Since Massiah was unaware that he was talking to police as well as their

"agent," he could not have been expected knowingly to employ his constitutional rights. Similarly, in *McLeod*, defendant "voluntarily" made incriminating remarks during conversation with police after in-

however, defendant Crisp was fully warned of his rights before his statement and still he wished to inform the agents without the presence of his attorney. Although the agents could have informed Crisp's attorney before proceeding to the jail to interview his client, failure to do so does not require a reversal in this case. United States v. Smith, 379 F.2d 628, 633 (7th Cir. 1967), certiorari denied, 389 U.S. 993, 88 S.Ct. 491, 19 L.Ed.2d 486; cf. United States v. Four Stars, 328 F.2d 1406 (9th Cir. 1970).

### III

Defendant's next contention is that the district judge improperly admitted evidence relating to an escape and an attempted escape by defendant from Wisconsin jails pending trial for the instant offense. On October 9, 1967, while lodged in the Waukesha County Jail, Crisp apparently attempted escape by "lunging" at a jailer and scuffling with him after completing a telephone call. Two months later, on December 12, defendant escaped from the Ozaukee County Jail in Port Washington, Wisconsin, after assaulting a jailer. Defendant contends that it was improper to introduce these events because of their inherently prejudicial nature. It is well settled, however, that evidence of escape and attempted escape is admissible to prove a consciousness of guilt. United States ex rel. Miller v. Pate, 342 F.2d

646, 649 (7th Cir. 1965), reversed on other grounds, 386 U.S. 1, 87 S.Ct. 785, 17 L.Ed.2d 690; United States v. King, 373 F.2d 813, 815 (2d Cir. 1967), certiorari denied, 389 U.S. 881, 88 S.Ct. 120, 19 L.Ed.2d 174; United States v. Ballard, 423 F.2d 127, 133 (5th Cir. 1970); see also Rule 4–04, Proposed Rules of Evidence for the United States District Courts and Magistrates, Preliminary Draft (March 1969). Although evidence of the assaults connected with those events might have been excluded to avoid unnecessary prejudice, the district judge did not abuse his discretion in concluding that the manner of escape was a relevant aspect of that proof of admission of guilt. Finally, the judge carefully cautioned the jury that escape was at best "slight evidence" of guilt. See Alberty v. United States, 162 U.S. 499, 510–511, 16 S.Ct. 864, 40 L.Ed. 1051.[4]

### IV

Defendant objects that the trial judge erred in admitting as supporting proof of guilt the expenditure of large sums of money by defendant Crisp and his confederates after the date of the robbery. Crisp also urges that the judge mistakenly refused to give an instruction limiting consideration of this evidence.

Harold Timm, one of the robbers, testified that need of money was the motive of the robbery. He stated that Crisp, like his partners, was out of a job and in need of money prior to the hold-up.

dictment but before counsel was appointed for him under state law prior to his arraignment. Dissenting from the affirmance of the conviction despite *Massiah,* Judge Gibson of the Supreme Court of Ohio pointedly observed that "It can safely be assumed that the chief deputy sheriff and the assistant prosecuting attorney did not advise defendant of his right to counsel or the Court of Appeals would certainly have noted this fact. Thus, there is no possibility of a waiver of defendant's right to counsel after being informed of his right thereto. * * * [I]f the use of such statements after indictment of an accused whose counsel is absent is, under the Constitution, prohibited, as Massiah holds, there can be no

question that the plain import of the opinion is that the Constitution prohibits the use of statements against interest by a defendant who has not even been advised of his right to counsel." State of Ohio v. McLeod, 1 Ohio St.2d 60, 203 N.E.2d 349.

4. Defendant has claimed before this Court that the alleged attempted escape at Waukesha should not have been admitted because the evidence failed to establish that fact and only showed a simple assault. This was not the basis for the objection to the evidence below and has not properly been raised on this appeal. In any event, the description of the conduct of defendant in evidence certainly created the inference of an attempted escape.

He also related that after the robbery the group divided the loot and then traveled to Chicago, Illinois, where they purchased clothes, frequented bars, and eventually picked up two girls as companions. They traveled from Chicago to Las Vegas, Nevada, having purchased round-trip tickets for all seven persons in cash at the airport. In Las Vegas, they gambled for several days before returning to the Midwest.

Kathy Fletcher corroborated these remarks. She stated that she met the defendant and his companions in Chicago and traveled to Las Vegas in the company of Harold Timm. She indicated that Crisp, like the others, purchased his ticket at the airport in cash, the cost being approximately $212. She testified that she witnessed Crisp gambling during the stay in Las Vegas. Finally, she said that at one time she observed Timm's open suitcase in which money and a gun were visible.

 It is well settled that the sudden, unexplained acquisition of wealth is competent evidence supporting proof of guilt in larceny or crimes involving a motive of enrichment. Proof of possession of substantial sums of money after the date of an offense may be admissible circumstantial evidence where warranted by the particular facts of the case. United States v. Brewster, 427 F.2d 409, 411 (10th Cir. 1970); United States v. Jackskion, 102 F.2d 683, 684 (2d Cir. 1939), certiorari denied, 307 U.S. 635, 59 S.Ct. 1032, 83 L.Ed. 1517; Hansberry v. United States, 295 F.2d 800, 807 (9th Cir. 1961). Likewise, possession of cash by a close relative (United States v. Smith, 428 F.2d 1183 (4th Cir. 1970)) or by an accomplice (Self v. United States, 249 F.2d 32 (5th Cir. 1957)) may also hold relevance where sufficiently connected by other circumstances to the defendant and his alleged criminal offense. A sudden increase in cash expenditures or other unusual circumstances in the defendant's handling of money may also be of probative value. See Campbell v. United States, 269 F.2d 688 (1st Cir. 1959), vacated on other grounds, 365 U.S. 85, 81 S.Ct. 421, 5 L. Ed.2d 428; cf. Thompson v. United States, 389 F.2d 37 (9th Cir. 1968), certiorari denied, 391 U.S. 903, 88 S.Ct. 1651, 20 L.Ed.2d 417. Thus expensive trips, gambling, and other instances of free spending or high living may be pertinent. Cf. United States v. Ravich, 421 F.2d 1196, 1204 (2d Cir. 1970). Although relevant to the probative value and weight of such evidence, proof of prior impecunity is not necessary, and admission of this type of testimony is entrusted primarily to the sound discretion of the trial court. See United States v. Brewster, 427 F.2d 409, 411–412 (10th Cir. 1970); Self v. United States, 249 F.2d 32, 34–35 (5th Cir. 1957); but see Haas v. United States, 344 F.2d 56, 63–64 (8th Cir. 1965). In this instance, that discretion was not abused.

 The trial judge also rejected as unnecessary defendant's separate instruction limiting consideration of this evidence as proof of guilt.[5] Although such an instruction might be appropriate or even necessary on other facts, the district judge was within his authority in rejecting it here. Instead, he fully instructed the jury on the defendant's theory of the case, including his explanation of the expenditures of funds after the date of the robbery. We find no error in this course of action on these facts.

### V

 Defendant also asserts failure of the prosecution to establish venue for this trial. He contends that the Government improperly proved that the Bank of Greenfield was insured by the Federal Deposit Insurance Corporation

---

5. The requested instruction provided:
"The expenditure of sums of money shortly after the robbery cannot be used as evidence of guilt unless it is established to the satisfaction of the jury that the defendant, Donald Roy Crisp, did not have money in his possession prior to July 26, 1967."

through the introduction of a certificate so indicating. This was held adequate proof in United States v. Skiba, 271 F.2d 644 (7th Cir. 1959), certiorari denied, 362 U.S. 924, 80 S.Ct. 678, 4 L.Ed.2d 743, and we reaffirm our conclusion in that case. The certificate was properly admissible into evidence, and the trial judge was justified in relying thereon in taking judicial notice that there was proper venue through the Bank of Greenfield's location in Greenfield, Wisconsin. Cf. United States v. Cobb, 397 F.2d 416 (7th Cir. 1968), certiorari denied, 393 U.S. 924, 89 S.Ct. 255, 21 L.Ed.2d 260.

## VI

■ Defendant's final objections on this appeal relate to trial conduct of the prosecutor and the judge. He argues that the prosecutor inappropriately expressed the opinion during closing argument that Harold Timm, the principal witness for the Government, had testified truthfully. These remarks were, however, not improper, for "[t]he Government's attorney did not say nor insinuate that the statement was based on personal knowledge or on anything other than the testimony of the witness given before the jury * * *." Lawn v. United States, 355 U.S. 339, 359–360, note 15, 78 S.Ct. 311, 323, 2 L.Ed.2d 321.

Equally unacceptable is the claim that a mistrial should have been granted as a result of a misunderstanding between the judge and defense counsel concerning objections to Harold Timm's testimony. The judge's rulings were not incorrect, and resulted in a *de minimis* increase in the evidence offered against Crisp by that witness.

## VII

■ Although we have concluded that certain testimony should not have been admitted against defendant in his trial, a careful review of the record convinces us that the error was harmless beyond a reasonable doubt. Chapman v. California, 386 U.S. 18, 21–22, 87 S.Ct. 824, 17 L.Ed.2d 705. The direct testimony of coconspirator Timm, the cir-

cumstantial corroboration of that testimony, and the admissible confession of defendant Crisp himself remove any doubt of his guilt in connection with the charge. United States v. Johnson, 426 F.2d 1112, 1115–1116 (7th Cir. 1970); United States v. Allsenberrie, 424 F.2d 1209, 1215 (7th Cir. 1970); cf. United States ex rel. Moore v. Follette, 425 F.2d 925, 928 (2d Cir. 1970); Whitsell v. Perini, 419 F.2d 95, 96 (6th Cir. 1969).

We wish to acknowledge that Robert Friebert of the Milwaukee bar ably and ingeniously represented defendant as appointed counsel in this Court.

The judgment is affirmed.