**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Anthony Charles DURHAM, Defendant-Appellant.**

**No. 72-1067.**

United States Court of Appeals, Seventh Circuit.

Argued Sept. 18, 1972.

Decided Feb. 28, 1973.

———————

David F. McNamar, Indianapolis, Ind., for defendant-appellant.

Stanley B. Miller, U. S. Atty., Charles Goodloe, Jr., Asst. U. S. Atty., Indianapolis, Ind., for plaintiff-appellee.

Before SWYGERT, Chief Judge, CASTLE, Senior Circuit Judge, and PELL, Circuit Judge.

SWYGERT, Chief Judge.

Anthony Charles Durham appeals from his conviction by a jury for the armed robbery of the treasurer of the Drover Street Federal Credit Union in Indianapolis in violation of 18 U.S.C. § 2113(a). Durham asserts four reasons for the reversal of his conviction: (1) the erroneous admission of testimony concerning his purported confession in violation of the fifth and sixth amendments to the Constitution, (2) the erroneous admission of a government agent's memorandum and notes as to the purported confession for the purpose of reinforcing the agent's credibility, (3) the erroneous admission of irrelevant prejudicial evidence concerning a black Impala Chevrolet that Durham had allegedly stolen, and (4) the absence of any evidence to establish that Durham had knowledge or intent to rob a federal credit union in violation of the federal statute.

The defendant was indicted on March 20, 1961 and found guilty by a jury on May 19, 1961. He received a twenty-year sentence which was vacated on August 8, 1961. He was resentenced to ten years after the district judge had received a study of Durham in accordance with 18 U.S.C. § 4208(c). The August 8, 1961 sentence was vacated on November 25, 1964 since Durham and his attorney were not present at the first resentencing, in accordance with the requirements of United States v. Behrens, 375 U.S. 162, 84 S.Ct. 295, 11 L.Ed.2d 224 (1963), affirming 312 F.2d 223 (7th Cir. 1962). Durham then received the same ten-year sentence. That sentence was later vacated on September 30, 1971 after Durham had filed a petition for writ of error *coram nobis* under 28 U.S.C. § 2255, based on the failure of the court or his attorney to inform him of his appellate rights. He was then given a ten-year sentence to be served concurrently with another sentence with credit allowed for time already served. After the final resentencing, Durham's counsel moved for judgment of acquittal or for a new trial raising all of the issues presented in this appeal. The district court denied the motion.

Special Agent Fred Doerner of the Federal Bureau of Investigation, the agent in charge of the investigation, testified at Durham's trial that the defendant confessed having committed the crime when Doerner interviewed him at the Marion County jail. Doerner testified that prior to the taking of the orally admitted committing the crime and that on January 23, 1961 he, Doerner, took a statement of confession from the defendant which the defendant refused to sign. Doerner further testified that prior to the taking of the statement, he informed "Durham that he was not required to make any statement; that any statement he did make could be used against him in court, and that he was entitled to the services of an attorney." The defendant denied making the statement of confession.

Counsel on behalf of Durham argues that it was error to admit the testimony without a hearing on the voluntariness of the confession since Doerner knew that the defendant was represented by counsel and yet counsel was not present when the statement was obtained. The Government in reply maintains that although the defendant denied making the statement, he did not deny that he had been advised by Doerner of his rights to counsel and to be silent. The Government also argues that Durham did not raise the voluntariness issue at trial and

is therefore precluded from raising it for the first time on appeal, especially since there were no "alerting circumstances." United States ex rel. Lewis v. Pate, 445 F.2d 506, 508 (7th Cir. 1971). Finally, the Government contends that Durham never asserted that he requested counsel and therefore it may properly be concluded that he waived this right.

The robbery occurred on December 9, 1960. Joseph Mazelin, counsel for the defendant, spoke with agent Doerner on the telephone on December 20, 1960 and thereafter had Durham talk with the agent. Doerner was also in municipal court on December 30, 1960 and saw Mazelin representing Durham on a state criminal charge. Mazelin also represented Durham at the preliminary hearing before the United States Commissioner on January 5, 1961, at which Doerner was present. Doerner interviewed the defendant on January 2, 9, 16, 20 and 23, 1961 while Durham was in the Marion County jail. Attorney Mazelin was not present at any of these interviews.

It is undisputed that agent Doerner knew that Durham was represented by counsel when he obtained the incriminating statements. Although the agent's first interview with Durham on December 20, 1961 was arranged by his counsel, there is nothing in the record that indicates that Doerner ever informed Durham's counsel of the five subsequent interviews in the Marion County jail.

The defendant contends that the statements obtained from him in the absence of his attorney deprived him of his sixth amendment right to have assistance of counsel for his defense in the criminal prosecution. This issue was first raised in his motion for a new trial.

The Supreme Court in Massiah v. United States, 377 U.S. 201, 206, 84 S. Ct. 1199, 1203, 12 L.Ed.2d 246 (1964), held that Massiah had been denied his sixth amendment right to assistance of counsel "when there was used against him at his trial evidence of his own incriminating words, which federal agents had deliberately elicited from him after he had been indicted and in the absence of his counsel." Here, agent Doerner, knowing Durham was represented by counsel, obtained incriminating statements from him in the absence of counsel and after his arrest and the preliminary hearing.

Although the Government has not raised the issue, we think it is necessary for us to consider two questions in applying the principles of Massiah to this case. The first is whether Massiah is to be applied retroactively. Durham points to the comparative time sequence of his case with that of Massiah and Spano v. New York, 360 U.S. 315, 79 S. Ct. 1202, 3 L.Ed.2d 1265 (1959). Regardless of the comparative time sequences of those cases, we believe the question is controlled by McLeod v. Ohio, 381 U.S. 356, 85 S.Ct. 1556, 14 L. Ed.2d 682 (1965), mem. rev'g 1 Ohio St.2d 60, 203 N.E.2d 349 (1964). There, McLeod willingly made inculpating statements to the chief deputy sheriff and the assistant prosecuting attorney after his indictment and in the absence of counsel. At the time the statements were made, McLeod had not been arraigned and had not requested appointment of counsel. The statements were subsequently introduced at his trial for murder. The Supreme Court reversed the conviction and applied Massiah retroactively.[1] See also United States ex rel. Graham v. Mancusi, 457 F.2d 463, 470 (2d Cir. 1972); United States ex rel. O'Connor v. State of New Jersey, 405 F.2d 632, 637 (3d Cir. 1969); Hancock v. White, 378 F.2d 479, 482–483 (1st Cir. 1967).

The second question is whether Massiah is limited to post-indictment statements or whether it includes statements obtained after arrest and preliminary hearing. I read Massiah to bar the admissibility of the statements obtained

[1]. McLeod, as here, was a direct appeal in which the trial was held prior to the Supreme Court's decision in Massiah.

here since the Government had initiated "adversary judicial criminal proceedings" against Durham prior to the time the statements were obtained. *Cf.* Kirby v. Illinois, 406 U.S. 682, 688, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972). Although the Government was entitled to continue its investigation subsequent to the defendant's arrest and preliminary hearing, it could not, in my opinion, permissibly interview the defendant without advising his counsel. The facts here are similar to *McLeod,* except that, unlike *McLeod,* the government agents obtained the incriminating statements from Durham in the absence of retained counsel known to be representing the defendant on this criminal charge. Such conduct would appear to raise ethical questions.[2]

Doerner attempted to obtain incriminating statements from Durham on four separate occasions while the defendant was in jail even though he denied complicity during the first three interviews.[3] In my opinion, the Government had the burden to show that the agents had informed Durham's counsel of the intended interviews after his arrest. It failed to adduce such proof.[4]

Since Doerner's testimony concerning Durham's incriminating statements should not have been admitted, it follows that the written statement prepared by Doerner of Durham's confession was also inadmissible. There was no need to reinforce Doerner's credibility since his original testimony should have been suppressed.

The defendant further contends that the trial judge erred in admitting evidence relating to a stolen black Impala Chevrolet. The Government presented a number of witnesses who testified that a black Impala Chevrolet had been stolen prior to the robbery. Another Government witness testified that he had been arrested for possession of a stolen black Impala Chevrolet and that he had borrowed the car from the defendant several times during December 1960. Lastly, another witness testified that on the day of the robbery he noticed two men in a black Impala Chevrolet which was parked near the Drover Street Federal Credit Union. The witness could not identify the defendant as either of the two men. The foregoing evidence, standing alone, was completely irrelevant to the charge on which the defendant was tried. The only possible basis for its admission was certain statements made by the defendant to agent Doerner. Since these statements were inadmissible for the reasons I have heretofore stated, it follows that the evi-

2. The American Bar Association, Code of Professional Responsibility, DR 7–104 (A) (1) provides:
   During the course of his representation of a client a lawyer shall not:
   (1) Communicate or cause another to communicate on the subject of the representation with a party he knows to be represented by a lawyer in that matter unless he has the prior consent of the lawyer representing such other party or by law is authorized to do so.

3. United States v. Smith, 379 F.2d 628, 631 (7th Cir. 1967), cert. denied, 389 U.S. 993, 88 S.Ct. 491, 19 L.Ed.2d 486, is distinguished from this case in that there false exculpatory statements made by Smith were uttered immediately after *Miranda* warnings had been given and before representation by counsel. A similar fact situation existed in United States v. Cassell, 440 F.2d 569, 571 (7th Cir. 1971). But here, there were repeated attempts by Doerner to obtain an incriminating statement from the incarcerated Durham in the absence of counsel known by Doerner to be representing Durham.
   United States v. Crisp, 435 F.2d 354, 357 (7th Cir. 1970), cert. denied, 402 U.S. 947, 91 S.Ct. 1640, 29 L.Ed.2d 116, is also distinguished from the instant case in that there the incriminating statement was the result of a request by the incarcerated Crisp to speak with the federal agents. In this case, Durham did not initiate the interviews and it was not until the fourth day of the interviews in jail that he admitted having committed the crime.

4. My view would be entirely different if the Government at a retrial establishes that defense counsel throughout the post-arrest interviews was aware of the interviews and approved of them.

dence relating to the stolen Chevrolet automobile was also inadmissible.

The defendant's final contention is that the Government failed to prove that he had a specific intent to rob an officer of a federal credit union in violation of 18 U.S.C. § 2113(a) and that such intent was a necessary element of the offense. There was no specific evidence of intent by Durham to rob a federal credit union officer other than his admission on January 9, 1961 to Doerner that he knew it was a federal offense to rob the credit union because he had seen the sticker on the front door which related that fact. Thus if Durham's jail statements are inadmissible, there is no evidence of intent to rob a federal credit union officer. I see no reason under the circumstances of the disposition of this appeal to decide whether or not proof of intent is an element of the offense.

The judgment of conviction is reversed and remanded for further proceedings not inconsistent with this opinion. In my judgment, the further proceedings would be in the form of a new trial; however, the views of Judge Castle and Judge Pell, which control in this respect, requires only as a first step a hearing on the voluntariness issue, with a new trial to follow only if the voluntariness issue is resolved against the Government.

PELL, Circuit Judge (concurring in part and dissenting in part).

To the extent that the opinion of Chief Judge Swygert rests upon a *per se* rule that would exclude confessions when counsel is not notified of or present at the interrogation, I dissent from the opinion.

In my opinion, the authorities cited in Judge Castle's dissenting opinion correctly state the law that notwithstanding the existence of counsel, either appointed or retained, a defendant may waive the presence and assistance of that counsel, provided it very clearly appears that the accused deliberately and understandingly chose to forego that as-

sistance. I cannot agree, however, with Judge Castle's opinion that the record demonstrates that Durham did so here.

The factual context in which the continuing interviews were conducted is far different than that involved in United States v. Springer, 460 F.2d 1344 (7th Cir. 1972), and in that case we observed "[o]n the basis of the particular factual situation before us, and we go no farther than that, we are of the opinion that the confession of May 18 was properly received into evidence." *Id.* at 1352.

In *Springer* an extensive evidentiary hearing was held. In the present case the matter was not explored. While it is true that there are overtones of waiver of the issue vis-à-vis trial tactics emphasis on denial of any confession at all, I conceive the right to effective assistance of counsel to be such a fundamental constitutional guarantee that when the interrogation takes place after knowledge of the existence of counsel the situation calls for a ventilated determination that there was a deliberate and knowledgeable waiver. The burden in this factual situation on the prosecutor is a heavy one but I do not agree with the implicit premise of Judge Swygert's opinion that it is an impossible accomplishment.

Inasmuch as I do not find that the confession was necessarily involuntarily given, its admission as evidence in the trial may not have been improper. I therefore would remand for a hearing on the matter of voluntariness. If it is determined that the confession was voluntary, i. e., that the defendant understandingly waived the presence of counsel and otherwise was not coerced, the conviction should stand. If the confession was not voluntary, then a new trial is necessary, Jackson v. Denno, 378 U.S. 368, 394, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964).

I find no other error requiring reversal if the confession is determined to be voluntary. However, if the opposite result is reached, the testimony regarding

the black Chevrolet would have had no proper basis for admission.

CASTLE, Senior Circuit Judge (dissenting).

Two compelling reasons lead me to find that Durham's confession of the robbery was properly admitted at trial: 1) Durham voluntarily and knowingly waived any right to have his counsel notified of the interview at which he made his confession, and 2) under applicable constitutional doctrines governing the admissibility of confessions existing at the time of trial, the trial court had to first find some indication that Durham's confession was involuntary before it was required to hold a *sua sponte* hearing on its admissibility and on the validity of any waiver of notice to Durham's attorney. On the strength of these reasons, I respectfully dissent from the views of Judges Swygert and Pell.

## I.

Judge Swygert holds in his opinion that the FBI was obligated to inform Durham's counsel of the interview, and that in the absence of such notification, any statement taken at the interview would be inadmissible. This analysis, however, fails to consider whether Durham waived any right to have his retained counsel notified of the FBI interview on January 23, 1961, and whether this waiver would relieve the FBI from the duty of telling Durham's counsel of its planned meeting with his client.

The facts of this case show an undisputed case of voluntary and knowing waiver. Durham knew and was told that he could contact his counsel and have him present, but he decided that he did not need or want him. FBI agents testified without contradiction that they advised Durham of their identity, advised him that anything he said might

be used against him, and advised him that he had the right to the services of an attorney. In spite of these warnings— and their obvious implications that Durham could either remain silent or have his counsel present while he gave a statement—Durham chose to go ahead and to admit his participation in the robbery.[1] These facts demonstrate Durham's clear and knowing waiver of any right to have his counsel notified of the interview.

The circumstances surrounding this waiver lend added credence to the conclusion that it was knowing and voluntary, for defendant had freely indicated his willingness to talk to FBI agents without his counsel being present on several occasions prior to the date of his confession. On December 20, 1960, the date on which Durham was first questioned by the FBI, his counsel arranged the time and place for the meeting. Yet, when Durham showed up for the session, his counsel was not accompanying him, even though the session was to last four hours. Durham freely admitted at trial that on subsequent occasions he "always talked at will" with FBI Agent Doerner about "anything he would ask me." Furthermore, after defendant balked at signing the confession he gave to the FBI, he told agents that he wanted to clear the matter up and that he would give them another statement after he had talked with his counsel. In short, the record indicates many occasions where the defendant felt that he had no need for his counsel's presence, and it supports the uncontradicted fact that he waived any right to have his counsel notified or present on January 23, 1961 when he confessed to the robbery.

Applicable case law holds that because of this waiver, there was no need for

1. Prior to and during the trial, Durham's only argument concerning his purported confession was that he had never confessed anything to the FBI agents. He did not raise the issues of voluntariness and his right to have counsel present until after the trial. In conducting our

review of this case, we must view all evidence in the light most favorable to the government and assume that Durham in fact made the confession. Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942).

FBI agents to notify Durham's counsel of the impending questioning session. The authority cited in Judge Swygert's opinion does not contradict this fact. Both Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964), and McLeod v. Ohio, 381 U.S. 356, 85 S.Ct. 1556, 14 L.Ed.2d 682 (1965), are irrelevant to situations involving a waiver of the right to have counsel present, for, as Judge Cummings correctly pointed out in United States v. Crisp, 435 F.2d 354, 358 (1970), cert. denied, 402 U.S. 947, 91 S.Ct. 1640, 29 L.Ed.2d 116 (1971), both these cases involved the deliberate acquisition of information under circumstances *preventing* an effective exercise or waiver of rights to counsel.[2] On the contrary, the circumstances surrounding Durham's confession did *not* prevent an effective waiver of the right to have counsel notified. In fact, the attempt to fashion a *per se* rule that will exclude all confessions obtained when retained or appointed counsel has not been notified of the questioning session is contrary to established authority in this circuit that no such automatic rules should apply in such circumstances. United States v. Springer, 460 F.2d 1344, 1350 (7th Cir. 1972), United States v. Crisp, 435 F.2d at 358, United States v. Smith, 379 F.2d 628, 633 (7th Cir.), cert. denied, 389 U.S. 993, 88 S.Ct. 491, 19 L.Ed.2d 486 (1967).

Given the evidence that Durham knowingly waived his right to have his counsel notified of the interview, and in the absence of persuasive authority that FBI agents should have given the notification in spite of the waiver, I believe that this case is governed by a plethora of decisions which have admitted confessions made under similar circumstances. These decisions have concentrated on the issue of whether the defendant's waiver was voluntary and knowing, and all have admitted confessions made without notice to counsel because the defendant was notified of his rights and deliberately waived them.[3] These cases plainly

2. In *Massiah*, law enforcement officers indirectly questioned the defendant without warning that they were doing so—here Durham had no doubt that FBI agents were questioning him. In *McLeod*, police failed to tell defendant of his right to get an attorney—here FBI agents notified Durham of this right.

3. United States v. Springer, 460 F.2d at 1351–1352 (FBI persuaded defendant to sign confession shortly after arraignment at which counsel had been appointed), United States v. Brown, 459 F.2d 319, 323 (5th Cir. 1971) (agents talked defendant into giving statement immediately after her attorney advised her to remain silent), United States v. Crisp, 435 F.2d at 358–359 (defendant asked to speak to agents and gave statement; agents failed to notify court-appointed counsel before going to jail for interview), United States v. Dowells, 415 F.2d 801 (9th Cir. 1969) (defendant gave statement after questioning about robbery without notice to counsel appointed at arraignment 11 days previously for another robbery), Arrington v. Maxwell, 409 F.2d 849, 853 (6th Cir.), cert. denied, 396 U.S. 944, 90 S.Ct. 381, 24 L.Ed.2d 245 (1969) (defendant gave statement after being told that his counsel could be called), United States v. Fellabaum, 408 F.2d 220, 225 (7th Cir.), cert. denied, Pyne v. United States, 396 U.S. 818, 90 S.Ct. 55, 24 L.Ed.2d 69 (1969) (counsel not notified of three questioning sessions at which defendant gave statements), Reinke v. United States, 405 F.2d 228, 229–230 (9th Cir. 1968) (defendant volunteered statement after preliminary hearing at which counsel had been appointed for him), Wilson v. United States, 398 F.2d 331, 333 (5th Cir. 1968), cert. denied, 393 U.S. 1069, 89 S.Ct. 727, 21 L.Ed.2d 712 (1969) (FBI interrogated defendant that it knew was represented by counsel and took statement), United States v. Hale, 397 F.2d 427, 430–431 (7th Cir. 1968), cert. denied, 393 U.S. 1067, 89 S.Ct. 723, 21 L.Ed.2d 710 (1969) (appointed counsel not told of time at which FBI was to interrogate his client), Coughlan v. United States, 391 F.2d 371, 372 (9th Cir.), cert. denied, 393 U.S. 870, 89 S.Ct. 159, 21 L.Ed.2d 139 (1968) (police did not tell court-appointed counsel that they were to interrogate defendant), United States v. Smith, 379 F.2d at 633 (defendant gave statement to FBI agents in automobile; interrogation stopped after FBI telephoned defendant's court-appointed counsel), Davidson v. United States, 371 F.2d 994 (10th Cir. 1966) (defendant gave statement to FBI while held on state charge and represented by local counsel).

indicate that it makes no difference whether the police or the defendant initiate the interviews, or how often or long the defendant is questioned, for the main concern is the validity of his waiver. On the strength of these decisions, I find that defendant Durham's contention that he was entitled to have his counsel notified of the interviews—despite his waiver of representation and notification—is without merit.

## II.

Judge Pell accepts the fact that Durham could waive his right to have his counsel notified of the interviews, but holds that it was necessary for the trial court to conduct a hearing on the deliberateness and understanding of Durham's waiver.

Such a hearing was unnecessary, for Durham's confession was given in 1961, when the law governing the elicitation and admissibility of confessions was quite different from what it is today. Therefore, United States v. Springer, 460 F.2d 1344 (7th Cir. 1972), is not determinative of the conditions for admissibility, for Springer was based upon Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), which was decided five years after Durham's confession was given, and which has not been applied retroactively. Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966). Instead, the crucial determination governing the admissibility of a pre-*Miranda* confession is whether the will of the defendant had been overborne so that his confession was not a free or voluntary act. Procunier v. Atchley, 400 U.S. 446, 453, 91 S.Ct. 485, 27 L.Ed.2d 524 (1971). Under this standard, the fact that the defendant was not represented by counsel when he gave his confession is not in itself sufficient proof of coercion to make a confession inadmissible, for the lack of representation by counsel goes only to the weight to be given other evidence of actual coercion. Procunier v.

Atchley, 400 U.S. 446, 453, 91 S.Ct. 485, 27 L.Ed.2d 524 (1971), United States ex rel. Lathan v. Deegan, 450 F.2d 181, 184 (2d Cir. 1971), cert. denied, 405 U.S. 1071, 92 S.Ct. 1520, 31 L.Ed.2d 803 (1972). Therefore, even if Durham could prove that his waiver was not knowing and voluntary, his failure to point to any other proof of coercion would make his confession admissible under pre-*Miranda* law. Since Durham has suggested, and the record indicates, no indication of FBI coercion in obtaining the confession, the trial court was not required to conduct a *sua sponte* hearing on its admissibility. United States ex rel. Lewis v. Pate, 445 F.2d 506, 508 (7th Cir. 1971). If there were such evidence of coercion to require a hearing on the voluntariness of the confession, the trial court might then consider the validity of Durham's waiver of notice to his counsel in order to assess how much weight the lack of counsel gives to the other evidence of coercion. But in the absence of such other evidence, such a consideration of the validity of the waiver is irrelevant.

Since the majority vote of this panel requires that this case be remanded for further proceedings of some kind, I am forced to agree with Judge Pell that a hearing on the voluntariness of Durham's confession can be held independent of a new trial. Jackson v. Denno, 378 U.S. 368, 394, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). However, my understanding of the law governing the admissibility of Durham's 1961 confession leads me to doubt that this hearing will find that the confession was involuntary and that a new trial is necessary.

## III.

I find that, given the admissibility of the confession, the other assignments of error raised by Durham do not constitute an abuse of discretion by the trial judge in admitting evidence or rise to the level of prejudicial error.