UNITED STATES of America,
Plaintiff–Appellee,

v.

Tyrone POWE, Defendant–Appellant.

UNITED STATES of America,
Plaintiff–Appellee,

v.

Robert JUAREZ, Defendant–Appellant.

Nos. 92–50422, 92–50447.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 2, 1993.

Decided Oct. 28, 1993.

Joel Levine, Los Angeles, CA, for defendant-appellant.

Sean R. Berry and Steven M. Bauer, Asst. U.S. Attys., Los Angeles, CA, for plaintiff-appellee.

Before BROWNING, FARRIS, and KELLY,* Circuit Judges.

PER CURIAM:

Tyrone Powe and Robert Juarez appeal their convictions for conspiracy in violation of 18 U.S.C. § 371 and theft of funds from a government project in violation of 18 U.S.C. § 666. Powe also appeals his conviction for providing a false statement on a tax return in violation of 26 U.S.C. § 7206(1). We affirm.[1]

---

* Honorable Paul J. Kelly, Jr., Circuit Judge, United States Court of Appeals for the Tenth Circuit, sitting by designation.

1. For the reasons stated in this per curiam opinion, we reject Powe's claim that the district court erroneously admitted a tape recording of a conversation between Powe and a codefendant obtained in violation of California Rule of Professional Conduct 2–100. Powe also claims the district court 1) erroneously denied his motion to strike as surplusage an overt act from the indictment, 2) violated his Fifth and Sixth Amendment rights by admitting the recording of his conversa-

tion with Bartlett and 3) violated Federal Rules of Evidence 404(b) and 403 by admitting his false state court testimony against him. Powe and Juarez both claim the district court 1) violated Brady by denying Powe's motion to discover government memoranda and 2) violated Federal Rule of Evidence 403 by allowing, in a joint trial of all defendants, evidence of codefendant Garner's prior misconduct to be used against codefendant Mrs. Garner. Juarez claims there was insufficient evidence to support his convictions. We address these claims in a separate unpublished decision.

## I.

In 1986, Tyrone Powe, Robert Juarez, Daniel Garner and Virgil Bartlett, all deputy sheriffs with the Los Angeles County Sheriff's Department, were promoted to the elite Major Violators Two Crew ("Majors II"), an anti-narcotics squad assigned to investigate large-scale violations and to seize narcotics and narcotics-related funds. As members of the squad, Powe and Juarez participated in the theft of money seized during their investigations. The officers planted narcotics and filed false affidavits to justify searches of private residences, and testified falsely in suppression hearings to conceal their thefts.

Powe and Juarez played a prominent role in thefts in connection with the *Nieto* investigation in December, 1986. Powe, the lead officer in the investigation, entered a van without a warrant in search of narcotics. Relying on the cocaine he found in the van, Powe sought warrants to search two apartments. He submitted supporting affidavits falsely stating the cocaine in the van was in plain view. He also stated neither of the apartments had been searched, although Juarez and other Majors II officers had already raided one of the apartments and seized several hundred thousand dollars. The officers seized $251,000 during the search of the second apartment pursuant to the fraudulently obtained warrant, but reported only $215,000. In a subsequent preliminary hearing to determine the admissibility of the cocaine seized from the van, Powe again testified falsely that the narcotics were in plain view.

The government initiated an investigation. Codefendant Virgil Bartlett agreed to become a cooperating witness for the prosecution. At the prosecution's request, Bartlett met with Powe before Powe was charged or arrested in this case and secretly recorded that conversation. The trial court denied Powe's motion to exclude the tape recording. The recorded conversation included no statements incriminating Powe, but the prosecutor commented to the jury on Powe's silence when Bartlett made assertions about joint criminal behavior.

## II.

█ Ex parte communications with a party represented by counsel are governed by California Rule of Professional Conduct 2–100.[2] Although a prosecutor has a duty under the Rule not to communicate with an indicted defendant known to be represented by counsel, *United States v. Lopez*, 4 F.3d 1455, 1460 (9th Cir.1993), and a court is empowered to exclude evidence obtained in violation of the Rule,[3] we have held the duty to avoid ex parte contacts does not apply to preindictment, noncustodial conversations with a suspect. *United States v. Kenny*, 645 F.2d 1323, 1339 (9th Cir.1981) ("In our view, the Government's use of such investigative techniques [in a non-custodial environment, prior to Kenny's charge, arrest, or indictment] does not implicate the sorts of ethical problems addressed by the Code.").[4]

█ Powe argues *Kenny* should not apply because the prosecution had promised Powe's attorney the prosecution would not talk to Powe without his counsel present. We need not decide the reach of *Kenny*—any promise

---

**2.** The Rule reads in part:

> (A) While representing a client, a member shall not communicate directly or indirectly about the subject of the representation with a party the member knows to be represented by another lawyer in the matter, unless the member has the consent of the lawyer.
>
> . . . .
>
> (C) This rule shall not prohibit:
>
> . . . .
>
> (3) Communications otherwise authorized by law.

**3.** *Lopez*, 4 F.3d at 1463 (noting that federal courts have "supervisory power" to "police ethical misconduct by prosecutors").

**4.** *Kenny* interprets the Model Code of Professional Responsibility, Disciplinary Rule 7–104(A)(1) ("DR 7–104(A)(1)"), not the newer California rule. However, since the language of the California rule is nearly identical to the language of DR 7–104(A)(1), the cases applying DR 7–104(A)(1) to criminal prosecutions are also relevant to interpreting the California rule.

While some circuits have imposed a similar duty before indictment where the defendant is in custody, *United States v. Killian*, 639 F.2d 206, 210 (5th Cir.1981); *United States v. Durham*, 475 F.2d 208, 211 (7th Cir.1973), only one court has suggested there might be such a duty before indictment when the defendant is not in custody. *United States v. Hammad*, 858 F.2d 834, 839 (2nd Cir.1988).

the prosecution made did not extend to undercover investigative contacts. Powe's attorney wrote to the U.S. Attorney requesting "that all contacts by investigators with Mr. Powe be conducted through [Powe's counsel]." Although investigators made one ex parte contact with Powe after this letter was written, the U.S. Attorney agreed that arranged interviews between government investigators and Powe would thereafter be conducted only through Powe's counsel. However, there is no indication in the letter to the U.S. Attorney or in the U.S. Attorney's responses that the government agreed to limit undercover contacts by an investigative agent or a cooperating witness such as Bartlett. Absent evidence that the government intended to forego one of its "most effective law enforcement techniques for investigating complex crime," *Lopez*, 4 F.3d at 1460 (citation and internal quotations omitted), we will not assume it did so in this case. *Kenny* therefore controls and the tape recording was properly admitted against Powe.

**AFFIRMED.**