UNITED STATES of America,
Plaintiff-Appellee,

v.

Cordell CASSELL, Defendant-Appellant.

No. 17550.

United States Court of Appeals,
Seventh Circuit.

April 9, 1971.

Sam F. Adam, Edward M. Genson, Chicago, Ill., for defendant-appellant.

William J. Bauer, U. S. Atty., Archibald T. Le Cesne, Asst. U. S. Atty., Chicago, Ill., for plaintiff-appellee; John Peter Lulinski, Jeffrey Cole, Asst. U. S. Attys., of counsel.

Before SWYGERT, Chief Judge, KNOCH, Senior Circuit Judge and KILEY, Circuit Judge.

KNOCH, Senior Circuit Judge.

Defendant was tried on a seven-count indictment. Count I charged Ingrid Wilson with forging the endorsement of the true payee, America Harris, on the back of a U. S. Treasury check. Count II charged Mrs. Wilson, Louis Wilson and defendant with unlawful possession of that check, knowing it to be stolen. Count III charged Mr. Wilson with forging the endorsement of the true payee, Clifton Rutter, on another U. S. Treasury check. Count IV charged defendant with aiding and abetting Mr. Wilson in uttering that check as true with intent to defraud. Count V charged defendant and the Wilsons with unlawful possession of that check knowing it to be stolen from the mail. Count VI charged defendant with aiding and abetting Mr. Wilson in uttering as true, with intent to defraud, another U. S. Treasury check payable to Hyman Cohon on which an endorsement had been forged. Count VII charged defendant and the Wilsons with unlawful possession of that check knowing it to be stolen from the mail.

In a second trial (the jurors having been unable to agree on a verdict in the first trial) defendant was found guilty on all counts in which he had been charged. He was sentenced to serve five years on Count II and given five years'

probation on the remaining counts to begin at the expiration of the sentence on Count II. This appeal followed.

The Wilsons both pleaded guilty and testified for the government implicating defendant as having provided them with the checks in question and indicia of identification to cash the checks.

The defendant presents the following issues for review:

A) Whether a post-indictment confession, made in the absence of one's attorney, is admissible in evidence.

B) Whether the trial court erred in taking on the role of an advocate on behalf of the prosecution when it consistently interrupted witnesses and interjected itself into each factual phase of the testimony.

C) Whether testimony relating to other alleged offenses by the defendant, at unspecified dates, places and times, with no corroboration that these offenses had ever occurred, denied the defendant a fair trial.

D) Whether evidence of the defendant's alleged adulterous conduct precluded a fair trial.

E) Whether the court erred in refusing defense counsel an opportunity to interview witnesses.

The defendant was arrested by Secret Service Agent Donald W. Tucker pursuant to indictment and arrest warrant. Over objection Agent Tucker testified to a conversation with defendant at the time of arrest and later in the Chicago Office of the United States Secret Service. He stated that he orally warned defendant of his rights and, on arrival at the office, presented defendant with a written statement of his rights which defendant signed in the presence of Agent Tucker and United States Postal Investigative Aid Theodore Dumas, who also testified at the trial. Without objection, this statement was admitted into evidence as government's Exhibit 5. It reads in pertinent part:

Before you are asked any questions you must understand your rights. You

have a right to remain silent. Anything you say can be used against you in court. You have the right to talk to a lawyer for advice before we ask you any questions and to have him with you during questioning. If you cannot afford a lawyer, one will be appointed for you before any questioning if you wish. If you decide to answer questions now without a lawyer present you will still have the right to stop answering at any time. You also have the right to stop answering at any time until you talk to a lawyer.

I have read this statement of my rights and I understand what my rights are. I am willing to make a statement and answer questions. I do not want a lawyer. I understand and know what I am doing. No promises or threats have been made to me and no pressure or coercion of any kind has been used against me.

Agent Tucker testified that defendant denied any knowledge of the three checks described in the indictment. As a result of a hearing outside the presence of the jury, Agent Tucker was not permitted to testify to details concerning the handling of other stolen checks which defendant disclosed, but was limited to a general statement that defendant admitted handling about 150 stolen checks but denied that he ever stole any of these. He had said he bought them, provided identification and resold them with identification for a percentage of the proceeds.

Defendant argues that these statements, though exculpatory as to the indictment checks, are rendered inadmissible by Massiah v. United States, 1964, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246, citing cases to support his view that *Massiah* is not limited to instances of deception. Defendant asserts that these statements though exculpatory, in part at least, were inadmissible as elicited from the defendant after indictment in the absence of counsel. Unlike the petitioner in Hancock v. White, 1 Cir., 1967, 378 F.2d 479, this defendant was informed of

his right to advice of counsel, court-appointed if necessary.

In oral argument we were advised that defendant had not yet acquired counsel when he made these statements. He was subsequently arraigned and counsel was apointed for him.

■ We do not agree that *Massiah* terminated a defendant's power to waive his rights (as defendant did here) and to make an admissible post-indictment statement against interest in the absence of counsel. United States v. Smith, 7 Cir., 1967, 379 F.2d 628, 633, cert. den. 389 U.S. 993, 88 S.Ct. 491, 19 L.Ed.2d 486; United States v. Crisp, 7 Cir., 1970, 435 F.2d 354, 358.

■ Defendant contends that by his unnecessary questioning of witnesses, the Trial Judge made himself, in effect, an advocate for the government, depriving defendant of a fair and impartial trial. The defendant sets out a long list of questions which the Court addressed to witnesses. We have carefully studied these questions. In every instance the Court sought clarification, eliciting specific details after a general or vague statement which standing alone might have been ambiguous. Defendant complains that the Court's questioning brought forth additional damning testimony. However, the Court's queries might also have rendered the testimony less worthy of credibility. We cannot agree that the Judge's efforts to secure clarity indicated his belief or lack of belief in the truthfulness of the witnesses. We do not find that the Trial Judge overstepped the bounds of propriety. Kramer v. United States, 8 Cir., 1969, 408 F.2d 837, 841; United States v. Godel, 4 Cir., 1966, 361 F.2d 21, 24, cert. den. 385 U.S. 838, 87 S.Ct. 87, 17 L.Ed.2d 72. The Trial Judge instructed the jury not to assume he held any opinion on matters respecting which he asked questions, that these questions were put in order to bring out facts not fully covered in the testimony and that the jurors were at liberty at all times to ignore all comments of the Court in making their own

findings as to the facts. He also stressed in his instructions the jury's province of determining credibility. Early in the trial, he had cautioned the jury that he asked questions not to help or hurt the prosecution or defense but only to clarify.

■ Defendant also sees prejudice in what is described as the Court's obvious disdain for defense counsel exhibited in twice refusing to allow counsel to confer with the Court outside the presence of the jury, and in one instance "castigating" counsel without provocation, in the jury's presence.

This last incident occurred during the testimony of a government witness Irenea Phillips. The unsual spelling of her first name was significant. She identified the defendant whom she knew only as "Corky". She testified to a conversation with Mr. Wilson in his home, in the defendant's presence, which she thought occurred in July, when an offer was made to her to cash forged Treasury checks. She said she saw green checks which Mr. Wilson had cupped in his hands. She was testifying that defendant sat on a bed typing her name and misspelling it. Counsel for defendant repeatedly interrupted this testimony, at one point making an objection which was overruled, at another time complaining that he could not hear. After his objection was overruled, he asked to be heard outside of the presence of the jury. The Court, pointing out that he was familiar with the pertinent law and that counsel had made his record, said hearing outside the presence of the jury was not needed. When counsel persisted, the Trial Judge said he had made his ruling, which would stand, and that there would be no haggling with him about it.

Perhaps the patience of the Trial Judge wore a little thin at this point, but viewing the comments in their context in the light of an ongoing trial, we cannot agree that the Court's comments were calculated to disparage defendant or his counsel in the eyes of the jury. See Goldstein v. United States, 8 Cir., 1933, 63 F.2d 609, 613, cited with approval by this Court in United States v. Glasser, 1940, 116 F.2d 690, 704–705, (aff'd in part) 1942, 315 U.S. 60, 62 S. Ct. 457, 86 L.Ed. 680, where the Supreme Court said (page 83, 62 S.Ct. at page 471.) "We must guard against the magnification on appeal of instances which were of little importance in their setting." (citing cases)

Defendant contends further that government witnesses were permitted to testify to non-indictment offenses of which defendant had no notice and no means of rebuttal.

In response to query, both the Wilsons said, over objection, they had seen other checks in defendants' hands on the day in question. Mr. Wilson also said he saw between 12 and 16 other checks like the U. S. Treasury check shown him. Defendant sees prejudicial error in allowing Mr. Wilson to testify to seeing defendant take mail from a mail box although he could not recall the specific date or place.

In connection with this same point, defendant also contends that the statements, to which Agent Tucker testified about defendant's alleged mode and extent of operation, were all dealing with extra-indictment offenses.

■ Similarly another witness, Fielding Monroe, Jr. was permitted to testify to discussions with defendant, after the last date specified in the indictment, about securing identification for cashing checks, although the Court instructed the jury only with respect to "earlier" acts. The latest date specified in the indictment is "on or about September 13, 1966." Mr. Monroe testified that two days after his release from Sandstone Penitentiary on September 15, 1966, defendant had visited him at home and then had later discussed identification for cashing checks. This was within the permissible ambit to show knowledge and intent.

Defendant argues that it was impossible for the jury to give defendant a fair trial by disassociating these vague refer-

ences unspecified as to time, date, place or particulars.

Defendant relies on Labiosa v. Government of the Canal Zone, 5 Cir., 1952, 198 F.2d 282, 285, where the Court held that proof of a similar offense admitted to show motive or intent must be clear and that evidence of vague and uncertain character should not be admitted. Defendant also cites Fabacher v. United States, 5 Cir., 1927, 20 F.2d 736, 738, to the same effect.

However, we are satisfied that the jury must have understood that Mrs. Wilson in speaking of other checks was referring to the day, time and place when defendant had given her one of the checks mentioned in the indictment, as she testified, together with indicia of identification for cashing it.

Similarly Mr. Wilson's statement about 12 to 16 checks refers to the time and place when he received from defendant the two checks he admitted forging and cashing.

With respect to stealing from mail boxes, Mr. Wilson did testify that he, defendant and sometimes another man named Andrew, would drive about in the Hyde Park and South Shore District and College area. He mentioned a specific building by address and said defendant was trying to teach him to open a mail box. He said he went with defendant on such trips about five times between May 1966 and July 3, 1966.

■ The other incidents were sufficiently particularized to be admissible to show knowledge and intent to defraud. United States v. Kelley, 7 Cir., 1951, 186 F.2d 598, 602–603, cert. den. 341 U.S. 954, 71 S.Ct. 1004, 95 L.Ed. 1375; United States v. D'Antonio, 7 Cir., 1966, 362 F.2d 151, 154, cert. den. 385 U.S. 900, 87 S.Ct. 204, 17 L.Ed.2d 131. The other checks to which the witnesses referred were so blended with the circumstances surrounding the checks listed in the indictment that proof of the indictment offenses incidentally involved these other related offenses. United States v. Hoskins, 7 Cir., 1969, 406 F.2d 72, 75; United States v. Levine, 7 Cir., 1967, 372 F.2d 70, cert. den. 388 U.S. 916, 87 S.Ct. 2132, 18 L.Ed.2d 1359.

Mr. Wilson testified that defendant had three addresses in 1966, at two of which he was living with a "girl friend." The Court sustained an objection in each instance stating twice that this had nothing to do with the case.

Fielding Monroe, Jr. named a woman whom he described as defendant's "mistress." The Court sustained an objection and instructed the jury to disregard it, stating that it was immaterial. When the same witness testified that he never knew defendant to have a job, the Trial Judge clarified that by asking "you mean you don't know whether he has or not?" to which the witness answered "right." The Court also sustained a motion to strike Mr. Monroe's testimony and instructed the jury to disregard it.

■ We cannot agree that these references to defendant's alleged adultery constituted prejudicial error. We see them at worst as harmless error. See United States v. D'Antonio, *supra*, 362 F.2d 155.

Lastly defendant argues that denial of his request, just before trial, to interview such witnesses as had not testified in the earlier trial was error. The Court refused to delay the trial for this purpose. Defense counsel referred then specifically to a witness coming from a federal penitentiary but the Court denied his motion. Defendant asks what possible harm could have resulted from allowing him a few minutes, as the opening statements had not yet been made.

■ Defendant cites Gregory v. United States, 1966, 125 U.S.App.D.C. 140, 369 F.2d 185, 188, where a prosecutor advised potential witnesses not to speak to others in his absence. The Court there held that the prosecutor's advice to eye witnesses denied appellant a fair trial. We do not see this case as applicable. Here the jury had already been selected when defense counsel made his request. The Court did say that there was nothing to hinder counsel, when the witness

arrived, from asking to see him and ascertaining whether the witness would talk to counsel, but that the Court would not order him to do so. We find no error in the Court's handling of defense counsel's request.

We have carefully scrutinized the record in the light of defendant's arguments and have studied the authorities to which our attention has been drawn. We are satisfied that defendant was not denied a fair trial.

The judgment of the District Court is affirmed.

Affirmed.