U.S.A. ex rel. Gregory T. JOHNSON,
Petitioner,

v.

Michael LANE, Respondent.

No. 81 C 7082.

United States District Court,
N.D. Illinois, E.D.

Oct. 27, 1983.

Gregory T. Johnson, Donald S. Honchell, Chicago, Ill., for petitioner.

Tyrone C. Fahner, Asst. Gen., Melbourne Noel, Asst. Atty. Gen., Chicago, Ill., for respondent.

## ORDER

ROSZKOWSKI, District Judge.

Before the court are petitioner's and respondent's motions for summary judgment on petitioner's amended petition for a writ of habeas corpus. Jurisdiction is based upon 28 U.S.C. § 2241. For the reasons set forth below, respondent's motion is granted and petitioner's motion is denied.

The petitioner seeks habeas relief on two grounds: (1) that the state courts improperly refused to suppress evidence flowing from a custodial interrogation of petitioner before he was given *Miranda* warnings, thereby violating his rights under the Fifth and Fourteenth Amendments; and (2) that the state courts incorrectly refused to suppress evidence of statements resulting from an interrogation by authorities when he had not waived his right to counsel, thereby violating his rights under the Sixth and Fourteenth Amendments. These claims are addressed separately.

## I. FIFTH AMENDMENT CLAIM

Petitioner's first claim to entitlement of habeas corpus is based on his claim that he was in custody when he was interrogated at his home by Chicago police officer Segroves. On August 9, 1975, Segroves was on patrol on 21st Street in Chicago when he saw petitioner and another man run in front of his squad car with a group of people pursuing them. Segroves and his partner drove down 21st Street to Leavitt where they saw an ambulance and a man being placed on a stretcher. Segroves learned the injured man had been involved in a fight, and heard that two people involved in the attack had been chased by a group of people. He further learned from a teenager that one of the men running (petitioner) was named Greg and lived at petitioner's address.

At 2:50 a.m., Segroves went to petitioner's home and spoke to him on his front porch. Segroves asked petitioner about the incident, and petitioner said he and Ricardo Amora had been chased by a group of Mexicans for unknown reasons. Segroves asked petitioner to come to the hospital. On the way there they went to Amora's home, where they picked him up and drove to the hospital. There some people identified Amora in connection with the incident, and Segroves arrested both of them.

Petitioner's claim for habeas relief based on the contention that he was in custody at the time he was interrogated at his home and on the way to the hospital requires little response from this court. The record contains more than ample evidence that he was not in custody until he was placed under arrest at the hospital. The test for whether one is in custody is whether a reasonable person under the circumstances would have felt free to leave. The test is an objective one, *United States v. Kennedy*, 573 F.2d 657, 660 (9th Cir. 1978), and "no single criterion is necessari-

ly decisive." *United States v. Jordan*, 557 F.2d 1081, 1083 (5th Cir.1977). The record indicates that petitioner was questioned in the familiar surroundings of his home, rather than in a police station. At times during the questioning at home, petitioner's mother was present. She accompanied him to the hospital as well. Therefore, there was not the sort of incommunicado interrogation found coercive in *Miranda*. Petitioner was never told that he was not free to leave, nor were any words said which would imply that he could not leave. There were only two officers present, and there is no suggestion that they displayed weapons. In fact, the state trial court found that the officers were non-aggressive and polite throughout their investigation.

■ While petitioner is correct that the presence of probable cause for arrest at the time of interrogation is a factor, it is only one factor. Moreover, it is questionable whether Officer Segroves had probable cause for arrest at the time he began questioning at petitioner's home. When Segroves went to petitioner's home, he had simply heard that two people involved in the attack had been chased by a group of people and that a teenager had identified petitioner as one of the men running. During questioning, petitioner admitted he had been chased by the group, and identified Amora as his companion. Only upon picking up Amora was Segroves able to confirm from personal knowledge that Amora was one of the two persons who had been chased. Finally, it was not until reaching the hospital that Segroves obtained the identification of Amora as one of the men involved in the attack. At each of these stages information was obtained which provided an additional link, or confirmed a previously suspected link, between petitioner and the crime. It is at least arguable that Segroves did not have probable cause until the time of the arrest at the hospital.

Based on this information, this court would conclude that petitioner was not in custody at the time of the questioning even if the court was examining the evidence *de novo*. Here, however, the state trial court and appellate court have already concluded that petitioner was not in custody during the relevant time, and this finding is entitled to a presumption of correctness. *Sumner v. Mata*, 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981). As petitioner has clearly failed to overcome this presumption, summary judgment on ground one of petitioner's amended petition for writ of habeas corpus is granted in favor of respondent.

## II. SIXTH AMENDMENT CLAIM

Petitioner's second claim presents a much closer legal question. This claim stems from the interrogation of petitioner after formal charges had been filed against him. The interrogation here at issue took place in the lock-up area of the courthouse after the petitioner appeared before a Circuit Court judge. Petitioner was advised by that judge to remain silent and that he should speak to a lawyer before he spoke to anyone. (Record at 96, 124). Also, he was told that if he could not afford a private attorney, he should request representation by the Public Defender, and an attorney would be assigned to him. After leaving the courtroom petitioner was placed in the lock-up, where he was approached by a police investigator, William Baldree, and an Assistant State's Attorney Parkerson. At this time petitioner was given the warnings required under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). After each right was told to him, petitioner nodded his head and stated "yes." Subsequent to receiving his *Miranda* warnings and without the presence of counsel, petitioner made several different statements relating to the incident underlying the charges against him. At trial these statements, over objection, were introduced as part of the prosecution's case against petitioner.

Petitioner claims that the admission of these statements at trial violated his Sixth Amendment right to counsel, extended to him by incorporation through the Fourteenth Amendment due process clause.

The respondent claims petitioner waived his right to counsel, as he was given the *Miranda* warnings and then voluntarily answered the questions asked by his interrogators. The issue for resolution in this case is whether the petitioner effectively waived his right to counsel when he made statements to investigator Baldree and Assistant State's Attorney Parkerson on August 13, 1975.

■ The Sixth Amendment right to counsel [1] attaches at the time adversary judicial proceedings are initiated against a person, "whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." *Brewer v. Williams*, 430 U.S. 387, 398, 97 S.Ct. 1232, 1239, 51 L.Ed.2d 424 (1977).

■ By Illinois statute, prosecutions begin upon the issuance and filing of a complaint, information, or indictment. See, Ill. Rev.Stat. ch. 38, §§ 111–1 and 111–2; *People v. Billings*, 52 Ill.App.3d 414, 424, 9 Ill.Dec. 903, 912, 367 N.E.2d 337, 346 (1st Dist.1977). Therefore, "[t]here is no question but that after the defendant is charged either by information, complaint, or indictment, it is an adversary proceeding and he is entitled to counsel." *People v. McDonald*, 23 Ill.App.3d 86, 90, 318 N.E.2d 489, 491 (2d Dist.1974), aff'd 62 Ill.2d 448, 343 N.E.2d 489 (1976). As formal charges had been filed against the petitioner prior to his interview in the courthouse lock-up, petitioner's right to assistance of counsel under the Sixth and Fourteenth Amendments had attached at the time he was questioned. *People v. Johnson*, 96 Ill. App.3d 763, 771, 422 N.E.2d 50 (1st Dist. 1981).

Petitioner's claim is based on the Sixth Amendment rule established in *Massiah v. U.S.*, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964) where the Supreme Court held:

[T]he petitioner was denied the basic protections of [the Sixth Amendment] when there was used against him at his trial evidence of his own incriminating words, which federal agents had deliberately elicited from him after he had been indicted and in the absence of his counsel.

377 U.S. at 206, 84 S.Ct. at 1203. The Supreme Court explained the rule further in a later case, stating:

That the incriminating statements were elicited surreptitiously in the *Massiah* case, and otherwise here, is constitutionally irrelevant. Rather, the clear rule of *Massiah* is that once adversary proceedings have commenced against an individual, he has the right to legal representation when the government interrogates him.

*Brewer v. Williams*, 430 U.S. at 400, 97 S.Ct. at 1240 (citations omitted). In the instant case, statements were deliberately elicited from petitioner after the right to counsel attached and in the absence of counsel. Under *Massiah* and *Brewer* they are not admissible unless petitioner waived his right to counsel.

■ Whether or not the Sixth Amendment right to counsel is waived is a matter of Constitutional law. To prove waiver the state must demonstrate that the petitioner knowingly, voluntarily and intelligently waived his right to counsel. *Brewer*, 430 U.S. at 404, 97 S.Ct. at 1242.[2] To establish such a waiver, the state must meet the "heavy burden" of proving that the accused understood his right to counsel and knowingly relinquished it. *Id.* Further, the Court held:

[T]he right to counsel does not depend upon a request by the defendant ... and ... courts indulge in every reasonable presumption against waiver.... This strict standard applies equally to an alleged waiver of the right to counsel

---

**1.** "In all criminal prosecutions, the accused shall enjoy the right ... to have the assistance of counsel for his defense." U.S. Const., amend. VI.

**2.** See generally regarding waiver, *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938); *United States v. Durham*, 475 F.2d 208 (7th Cir.1973); *United States v. Crisp*, 435 F.2d 354 (7th Cir.1970), *cert. denied*, 402 U.S. 947, 91 S.Ct. 1640, 29 L.Ed.2d 116 (1971).

whether at trial *or at a critical stage of pretrial proceedings.* (Emphasis supplied).

*Id.* In addition, the court's inquiry goes beyond assessing whether the accused was informed of and understood his right; "waiver requires not merely comprehension but relinquishment ..." of that right. *Id.*

The state trial court denied petitioner's motion to suppress his statements after an evidentiary hearing.[3] Affirming, the Appellate Court stated: "Defendant indicated that he understood the *Miranda* rights explained to him and affirmatively gave his permission for a statement to be taken...." *People v. Johnson,* 96 Ill.App.3d at 772, 422 N.E.2d 50. The Court found there was no merit to petitioner's claim that the Sixth Amendment right to counsel requires admonitions in addition to those of *Miranda. Id.*[4]

■ In a federal proceeding on a writ of habeas corpus, the district court is constrained to afford factual determinations by the state court a presumption of correctness. 28 U.S.C. § 2254(d); *Sumner v. Mata,* 449 U.S. 539, 551, 101 S.Ct. 764, 771, 66 L.Ed.2d 722 (1981). This court therefore accepts the facts as determined by the state trial and appellate courts. However, this court is not barred from reviewing "a mixed determination of law and fact that requires the application of legal principles to the historic facts of [the] case." *Cuyler*

*v. Sullivan,* 446 U.S. 335, 342, 100 S.Ct. 1708, 1714, 64 L.Ed.2d 333 (1980); see *Brewer,* 430 U.S. at 403–404, 97 S.Ct. at 1241–1242.

An examination of the relevant cases involving the Sixth Amendment right to counsel reveals "great confusion" in and among the Circuits.[5] Lacking specific guidance from the Supreme Court, no specific standard for waiver has been followed. The First, Third, Fifth and Eighth Circuits hold that provision of *Miranda* warnings are sufficient to establish a valid pretrial waiver.[6] Yet, the Second Circuit and at least one court in this district, hold that a "higher standard" governs pretrial waiver of Sixth Amendment rights and *Miranda* warnings alone do not establish a knowing waiver.

## A. Authority That Miranda Warnings Alone Are Insufficient To Produce A Knowing And Intelligent Waiver

Petitioner claims there is a higher standard of waiver for the Sixth Amendment right to counsel, than for the waiver of the Fifth Amendment right to counsel. Petitioner relies primarily upon cases of *United States ex rel. Sanders v. Rowe,* 460 F.Supp. 1128 (N.D.Ill.1978); *United States v. Satterfield,* 417 F.Supp. 293 (S.D.N.Y. 1976), aff'd 558 F.2d 655 (2d Cir.1976) and

---

**3.** The trial judge stated: "The motion to suppress the statement which was made on August 13, '75, in the bullpen when State's Attorney Parkerson was present will be denied." (State R. at 140). No further explanation was offered by the court.

**4.** In explaining that *Miranda* warnings were sufficient to achieve a waiver of the Sixth Amendment right to counsel the court reached these conclusions:

In this instance the sixth amendment right to counsel as articulated by *Massiah* and the fifth amendment right to counsel as enunciated in *Miranda* were indistinguishable in practical effect: they both entitled defendant to have counsel present during his interrogation. But the fact that his right rested on dual constitutional foundations did not require any warnings that were not given. Defendant was advised of the right and chose to waive it.

Thus his statements subsequently elicited in the questioning were properly admitted into evidence.
96 Ill.App.3d at 772, 422 N.E.2d 50.

**5.** See, *United States v. Brown,* 569 F.2d 236, 245 (5th Cir.1978) (Simpson, J. dissenting). See generally, Note, *Proposed Requirements for Waiver of the Sixth Amendment Right to Counsel,* 82 Col.L.Rev. 363 (1982); Note, *Sixth Amendment Right to Counsel: Standards for Knowing and Intelligent Pretrial Waivers,* 60 B.U.L.Rev. 738 (1980).

**6.** *Blasingame v. Estelle,* 604 F.2d 893 (5th Cir. 1979); *United States v. Brown,* 569 F.2d 236 (5th Cir.1978); *United States v. Monti,* 557 F.2d 899 (1st Cir.1977); *Moore v. Wolff,* 495 F.2d 35 (8th Cir.1974); *United States v. Cobbs,* 481 F.2d 196 (3d Cir.), *cert. denied,* 414 U.S. 980, 94 S.Ct. 298, 38 L.Ed.2d 224 (1973).

*United States v. Mohabir*, 624 F.2d 1140 (2d Cir.1980).

In *Sanders*, the petitioner, a state prisoner, was interrogated by police officers after a criminal complaint charging him with armed robbery had been filed with the court. Prior to the questioning, petitioner, while in custody, was advised of his *Miranda* rights and signed a written waiver form. After a short period of time, petitioner, without counsel, confessed to a different armed robbery. Later the same evening petitioner was again questioned by authorities and again signed a written waiver of rights form. Petitioner then confessed to second armed robbery. The trial court denied a motion to suppress the statements and the Appellate Court affirmed. In federal court on a writ of habeas corpus the petitioner claimed, *inter alia*, a violation of his Sixth Amendment rights under *Brewer* and *Massiah*. The state opposed petitioner's claim, arguing he had waived his right to counsel when he signed *Miranda* waiver forms.

District Court Judge Bua, held that Sanders' two confessions were obtained in violation of the petitioner's Sixth Amendment right to counsel. In analyzing whether *Miranda* warnings alone were sufficient to establish that an accused understood his Sixth Amendment right to counsel the Court stated:

> [W]aiver for Sixth Amendment purposes will not be presumed merely because the state can demonstrate a waiver of the *Miranda* Fifth Amendment right to counsel, for there is authority for applying a higher standard for waiver of the Sixth Amendment right to counsel. *United States v. Satterfield*, 558 F.2d 655, 657 (2d Cir.1976), presumably including the full requirements for waiver of the right to counsel at trial, see *Faretta v. California*, 422 U.S. 806, 835–36, 95 S.Ct. 2525 [2541], 45 L.Ed.2d 562 (1975).

460 F.Supp. at 1140. The Court concluded that because it previously found the state had not met its burden of establishing a waiver of petitioner's Fifth Amendment right to counsel it, *a fortiori*, had not established a Sixth Amendment waiver.[7] *Id.* at 1141.

The *Sanders* Court relied on the *Satterfield* case for its holding that there is a higher standard for waiver of the Sixth Amendment right to counsel than for the Fifth Amendment right to counsel. In *Satterfield*, the defendant was arrested and questioned by Drug Enforcement Administration agents two days after being indicted by a federal grand jury. The defendant was advised by the agents that he had been indicted and was given his rights under *Miranda*. Thereafter, the defendant made several statements to the agents. On the defendant's motion, the district court suppressed the statements. Interpreting *Massiah*, the Court held: "[A]fter indictment the advice of counsel can be waived only after such warning *and explanations* as would justify a court in permitting a defendant to proceed *pro se* at trial." (Emphasis added). 417 F.Supp. 293, 296, citing *Faretta v. California, supra*. The Second Circuit affirmed the district court with respect to the higher standard for waiver of the Sixth Amendment right to counsel. 558 F.2d 655, 657. The Court, however, did not comment on the extent to which the warnings must go.

The third case cited by the petitioner is *United States v. Mohabir, supra*. In this case, the defendant was questioned by federal agents after being indicted and taken into custody. Here, defendant was advised of his rights by an Assistant United States Attorney. The Assistant read each right and asked the defendant if he understood. The defendant was also asked, if, knowing his rights, was he prepared to answer questions without an attorney. To each question the defendant responded "Uh-hum-nodding yes." 624 F.2d 1140, 1145. Defendant then made some statements, which the district court refused to suppress. The

---

**7.** Note, however, Judge Bua's decision was not based principally upon Sixth Amendment grounds, but on Fifth Amendment grounds.

Second Circuit reversed, finding a violation of the defendant's Sixth Amendment right to counsel.

In its very thorough opinion, the Court traced the line of authority in the Second Circuit[8] which holds:

> [T]he government has a "heavy burden" of showing a waiver of Sixth Amendment rights by an indicted defendant and that the burden cannot be discharged unless a "higher standard" is satisfied than that met by merely showing that the accused made his statements after appropriate *Miranda* warnings were given.

*Id.* at 1148. The Court stated also that the fact that the defendant was informed of the indictment against him was not enough to establish he was informed of the rights he was giving up. *Id.* at 1190. In order for there to be a knowing and intelligent waiver, the Court said, it is important for an indicted defendant to "appreciate the gravity of his legal position" and "the urgency of his need for a lawyer's assistance." *Id.* at 1148. To meet this standard a Court must assure that:

> When an indictment has come down, riveting tightly the critical right to counsel, a waiver of that right requires the clearest and most explicit explanation and understanding of what is being given up.

*Id.* at 1149 (citations omitted). Applying these principles to the facts of the case, the Court held that "some additional indication was required that [the defendant] understood the nature and importance of the Sixth Amendment right he was giving up." *Id.* at 1151. Thus, in *Mohabir* the mere fact the defendant received the traditional *Miranda* warnings and was informed of the indictment against him did not satisfy the government's burden of proving a knowing and intelligent waiver of the Sixth Amendment right to counsel.

In the case at bar the respondents claim that petitioner's waiver was established by virtue of these facts: he was told by a judge presiding over his case to remain silent until he retained a lawyer; he was given the *Miranda* warnings and stated he understood them; he never requested counsel; and he made statements to the authorities after being warned of his right to counsel. These facts are similar to *Sanders, Satterfield* and *Mohabir,* with the important exception that the petitioner in the case at bar was advised by a judge to exercise his right to remain silent unless advised otherwise by counsel.

### B. Authority That Miranda Warnings Are Sufficient To Produce A Knowing and Intelligent Waiver

Representative of the cases holding *Miranda* warnings are sufficient to inform an indicted person of his Sixth Amendment rights is *United States v. Brown,* 569 F.2d 236 (5th Cir.1978). In *Brown,* the defendant was interrogated by F.B.I. agents after a preliminary hearing on state criminal charges. The federal charges arose from the same circumstances as the state charges. The defendant, after receiving full *Miranda* warnings and signing a waiver of rights form, gave several statements to the agents. At trial the prosecution used these statements against her. The district court found the defendant waived the right to the presence of counsel. The Fifth Circuit affirmed, holding that the proper standard in determining the question of waiver is that the "government must prove 'an intentional relinquishment or abandonment of a known right or privilege' *Johnson v. Zerbst,* 304 U.S. 458, 464 [58 S.Ct. 1019, 1023, 82 L.Ed. 1461] (1938)." *Id.* at 238. In so deciding, the court lent much credence to the fact the defendant had a college education and had worked as an elementary school teacher for thirteen years. *Id.* at 239. Based upon these considerations the defendant was held to have knowingly waived her Sixth Amendment right to counsel.

---

**8.** *United States v. Massimo,* 432 F.2d 324 (2d Cir.1970) (Friendly, J. dissenting), *cert. denied,* 400 U.S. 1022, 91 S.Ct. 586, 27 L.Ed.2d 633 (1971); *United States v. Satterfield,* 558 F.2d 655 (2d Cir.1976); *United States v. Lord,* 565 F.2d 831 (2d Cir.1977); *Carvey v. LeFevre,* 611 F.2d 19 (2d Cir.1979).

*Brown* holds that *Miranda* warnings alone are sufficient to establish waiver of the Sixth Amendment right to counsel. In so holding, the court did not expressly compare the Fifth Amendment waiver standards with the Sixth Amendment standards, as did the cases of *Sanders, Satterfield* and *Mohabir, supra.* Nor did the Court inquire into whether the defendant actually understood the gravity of her legal position or the urgency of her need for assistance of counsel. *Mohabir,* 624 F.2d at 1148. In effect, the Court applied a presumption of knowledge based upon the fact warnings were given and that the defendant was educated.[9]

### C. Authority in the Seventh Circuit

In *United States v. Cassell,* 440 F.2d 569 (7th Cir.1971), the Court held that where a defendant was given *Miranda* warnings and affirmatively waived his rights, the Sixth Amendment right to counsel was not violated.

In *Cassell,* the defendant was arrested pursuant to an indictment and arrest warrant. After he was taken into custody, defendant was orally informed of his *Miranda* rights and also given a written statement of his rights. Defendant then made statements to the agents which were used against him at trial. On appeal the defendant claimed a violation of *Massiah.* The government argued waiver. The Seventh Circuit found that the defendant waived his right to counsel. The Court relied on the fact defendant was provided with *Miranda* warnings and subsequently made statements to the government agents. It appears, here, the Court was using a standard similar to that in *United States v. Brown, supra.*

The Seventh Circuit decided *Cassell* prior to the Supreme Court's decision in *Brewer v. Williams,* 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424. In view of the language in

*Brewer* that courts should indulge "every reasonable presumption" against waiver of the right to counsel, there is at least some doubt as to the continued vitality of *Cassell.* In *Brewer,* the Court found it necessary to search the facts, beyond the mere recitation of *Miranda* warnings, to determine whether the defendant understood and knowingly relinquished his Sixth Amendment right. In contrast, the Court in *Cassell* seems to have presumed the defendant understood his right to assistance of counsel at the time he was interrogated. This conclusion was based upon the fact the defendant "was informed of his right to advice of counsel" and his subsequent signing of a statement of rights. *Cassell,* 440 F.2d at 571. The Court did not pass on the questions of whether the defendant knew of the indictment against him; whether he understood the urgency of his need for counsel; or whether he was aware of the gravity of his legal position.

### D. Policy Reasons For Requiring More Than Miranda Warnings To Establish Waiver Of Right To Counsel

There are several reasons for requiring more extensive warnings before waiver of the Sixth Amendment right to counsel will be found. First, the Fifth and Sixth Amendment rights are separate and distinguishable. The right to counsel under the Fifth Amendment is based upon the right to be free from self-incrimination. To safeguard the right against self-incrimination, the courts formulated the Fifth Amendment right to counsel. Presence of counsel at an in custody interrogation of a suspected criminal was, in part, to ensure against coercion by the interrogators. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). In *Miranda,* the Court outlined the procedures necessary for police to employ in securing statements from suspects. The *Miranda* warnings were designed to alleviate the coercive nature of an

---

**9.** See the strongly worded dissent by Simpson, J. criticizing the holding. 569 F.2d at 240. The dissent concludes that:

> [T]oday's holding reduces the standard for a knowing and intelligent relinquishment of a

fundamental constitutional right to a wooden ritual.

*Id.* at 251.

in custody interrogation. The decision reflected a conciliation of the need of authorities to investigate crimes and the suspect's right to be free from self-incrimination.

On the other hand, the right to counsel under the Sixth Amendment is for the purpose of ensuring a fair trial. That this right is vitally important in the pre-trial stages, as well as during the trial, has been stated as follows.

> It is central to that principle that in addition to counsel's presence at trial, the accused is guaranteed that he need not stand alone against the State at any stage of the prosecution, formal or informal, in court or out, where counsel's absence might derogate from the accused's right to a fair trial. The security of that right is as much the aim of the right to counsel as it is of the other guarantees of the Sixth Amendment— the right of the accused to a speedy and public trial by an impartial jury, his right to be informed of the nature and cause of the accusation, and his right to be confronted with the witnesses against him and to have compulsory process for obtaining witnesses in his favor. The presence of counsel at such critical confrontations, as at the trial itself, operates to assure that the accused's interests will be protected consistently with our adversary theory of criminal prosecution.

*United States v. Wade,* 388 U.S. 218, 226–227, 87 S.Ct. 1926, 1931–1932, 18 L.Ed.2d 1149 (1967). See also, *Brewer,* 430 U.S. at 398, 97 S.Ct. at 1239.

In contrast to the Fifth Amendment right to counsel, there are no countervailing urgent governmental investigatory interests in further interrogation of the accused once the Sixth Amendment has attached. Presumably, the government has, at the time a formal charge has been filed, enough evidence to establish a *prima facie* case against the accused. Thus, the conciliation of interests by the court in formulating the *Miranda* rule does not come into play once the Sixth Amendment right to counsel arises.

Another reason favoring more extensive warnings for waiver of Sixth Amendment right to counsel is that the defendant's position has changed after indictment. At this stage, he ordinarily has little to gain and may have much to lose by making statements to the state, and he needs to know more to make a knowing and intelligent waiver of his Sixth Amendment right to counsel. *Miranda* warnings alone do not inform the accused that he has been charged with a crime. Nor do they ensure that the accused appreciates the "gravity of his legal position and the urgency of his need for a lawyer's assistance." See, *Mohabir,* 624 F.2d at 1148. Without this information, there is no reasonable assurance that the defendant knowingly and intelligently waived the right to counsel under the Sixth Amendment.

Of further relevance to the issue of waiver of the Sixth Amendment right to counsel is *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). In *Faretta,* the defendant insisted on proceeding *pro se* at his criminal trial. The Court held that he could proceed *pro se,* but first it must be shown that he waived his right to assistance of counsel. For the defendant to waive this right "he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open." *Id.* at 835, 95 S.Ct. at 2541.

While there is a great difference in proceeding *pro se* at trial and waiving the right to counsel and submitting to police interrogation, these differences only apply to the substance of the admonitions the accused must be given. In either case, the defendant must be made aware of the dangers and disadvantages of the course he is going to pursue on behalf of his own defense. This is what *Sanders, Satterfield* and *Mohabir* seek to ensure.

### E. The Warnings Given Petitioner Were Sufficient For A Knowing and Intelligent Waiver

■ To decide the case at bar, this court finds it unnecessary to resolve the question

of whether *Miranda* warnings alone are sufficient to invoke a knowing and intelligent waiver. In the present case, petitioner was given advice beyond the bare *Miranda* admonitions. Shortly before the interrogation at issue, petitioner was advised by the presiding judge not to speak to anyone until he spoke with an attorney. While the judge did not explain precisely what were the dangers and disadvantages which could result from speaking to the police or prosecution without an attorney, he made it clear that it would be dangerous and disadvantageous to speak to them before speaking with counsel. The judge, as presiding officer of the court, told the petitioner not only that he *had a right* to remain silent and to an attorney, but that *he should exercise* those rights. This legal advice from the judge, coupled with the *Miranda* warnings given petitioner before questioning, were sufficient to alert petitioner to the urgency of his need for legal assistance and to the gravity of his legal position. Petitioner, therefore, was able to, and did in fact, give a knowing and intelligent waiver of his right under the Sixth Amendment. Thus, even under the standard expressed by the Second Circuit, petitioner knowingly and intelligently waived his Sixth Amendment right to counsel.

### III. CONCLUSION

There remains no genuine issue of material fact, and neither petitioner's Fifth Amendment nor Sixth Amendment claims entitle him to habeas relief. Therefore, petitioner's motion for summary judgment on his amended petition for a writ of habeas corpus is denied and respondent's motion for summary judgment is granted.